**Robert G. TICE, Plaintiff-Appellant,**

v.

**LAMPERT YARDS, INC., Defendant-Appellee.**

No. 84–1325.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 14, 1984.
Decided May 6, 1985.

Challoner Morse McBride, McBride Law Office, Sturgeon Bay, Wis., for plaintiff-appellant.

Roger Pinkert, Pinkert, Smith, Koehn, Weir & Jinkins, Sturgeon Bay, Wis., for defendant-appellee.

Before BAUER and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.*

COFFEY, Circuit Judge.

The jury found that the defendant, Lampert Yards, Inc., had discriminated against the plaintiff, Robert G. Tice, in dismissing him because of age. Upon review the dis-

* The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

trict court, however, found that there was insufficient evidence to support this verdict and granted Lampert Yards' motion for judgment notwithstanding the verdict. Tice now appeals the district court's decision. We affirm.

## I.

Tice, the millshop foreman for Lampert Yards' Sturgeon Bay facility, was terminated by Lampert Yards on July 17, 1980 at the age of 57. Following his dismissal he filed a charge of age discrimination with the Wisconsin Department of Industry, Labor and Human Relations ("WILHR") against Lampert Yards. A preliminary investigation determined there was probable cause to believe that Tice was dismissed because of his age; thereafter, on August 5, 1982 the complaint was dismissed after a hearing examiner determined that Tice failed to prove that Lampert Yards had discriminated against him on the basis of age.

On July 16, 1982, Tice commenced an action in federal court under the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 623(a). Throughout the state proceedings and the federal district court jury trial, Lampert Yards denied that it had taken any discriminatory actions in terminating Tice as foreman of its millshop. Rather, Lampert Yards argued that the reason for Tice's termination was because of the millshop's continued losses and for that reason it was eliminating the millshop at its Sturgeon Bay facility. Tice contended, however, that he was replaced by another employee and that the elimination of his job was simply used as a pretext to discharge him and to deny him his pension benefits. The jury awarded Tice $147,600 in damages after it found that he had been willfully discharged because of his age. Following motions after trial, the district court reviewed the jury's determi-

nation and granted the defendant's motion for judgment n.o.v. finding that the plaintiff had proven neither the necessary elements of his *prima facie* age discrimination claim nor that the defendant's reason for his termination was a mere pretext. The plaintiff now appeals the decision of the district court judge claiming that the granting of the defendant's judgment n.o.v. motion was improper.

## II.

In 1967, the United States Congress passed the Age Discrimination in Employment Act ("ADEA"). Its purpose is "to promote employment of older persons based on their ability rather than age...." 29 U.S.C. § 621. The vast majority of cases that have discussed the appropriate burdens and standards for action under the ADEA have adopted the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a race discrimination case. *See, e.g., Golomb v. Prudential Insurance Co. of America*, 688 F.2d 547, 551 (7th Cir. 1982); *Reeves v. General Foods Corp.*, 682 F.2d 515, 520 (5th Cir.1982). For example, in *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir.1979), the shifting burdens set forth in the *McDonnell Douglas* decision were adapted for an age discrimination analysis. *Id.* at 1008. Initially, the plaintiff must prove a *prima facie* case of age discrimination. This involves demonstrating: (1) the employee is within the protected age group (40–70); (2) the employee was discharged; (3) the employee was qualified to do the job; and (4) the employee was replaced. *See La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984) (adopting *Loeb's* enunciation of the *prima facie* case).[1] If the plaintiff demonstrates a *prima facie* case the employer then has the burden of offering a justifiable non-discriminatory reason for

---

**1.** The First Circuit's decision in *Loeb* was cited by the Supreme Court with approval in *Trans World Airlines v. Thurston*, ⸺ U.S. ⸺, ⸺,

105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985), wherein the Court noted that the shifting burdens are

the termination.[2] Finally, if the employer should produce evidence rebutting the plaintiff's *prima facie* case, the burden shifts back to the employee to prove that the reason given by the employer was a mere pretext for the age discrimination. *Id.*

■ With these shifting burdens in mind, we review the district court's decision applying the same judgment n.o.v. standard used by the district court judge.[3] The standard for determining whether a judgment n.o.v. should be granted is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed. *See, e.g., Syvock v. Milwaukee Boiler Mfg. Co., Inc.,* 665 F.2d 149, 153 (7th Cir.1981). Any conflicts in the evidence must be resolved in favor of the resisting party, and every permissible inference from the evidence must be resolved in favor of the party resisting the motion. *Wisconsin Liquor Co. v. Park & Tilford Distillers Corp.,* 267 F.2d 928, 930 n. 1 (7th Cir.1959). However, a mere scintilla of evidence will not support a verdict and an entry of judgment n.o.v. would be proper. *Gunning v. Cooley,* 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930); *La Montagne,* 750 F.2d at 1410. In other words, if there is insufficient evidence upon which a reasonable person could properly base a verdict, entry of judgment n.o.v. is appropriate. *See La Montagne,* 750 F.2d at 1410.

The first three elements of the plaintiff's *prima facie* case were not disputed at trial; rather, the sole issue concerned the fourth element, i.e., whether Tice was replaced by another, younger employee. In this regard, there was evidence that Tice began working as a carpenter with his father in 1939. In July of 1962, he was hired by Berns Brothers Lumber Company in Sturgeon Bay, Wisconsin, to work in the millshop as a carpenter and cabinetmaker. The millshop was specially equipped with machines and tools and was used to construct fine, detailed woodwork and cabinets (as compared to a saw shop which just cuts wood). In July of 1971, the defendant, Lampert Yards, purchased the business from Berns Brothers. Tice worked for Lampert Yards for a period of nine years, from July of 1971 until his termination in July of 1980. At the outset of his employment relationship with Lampert Yards, Tice was the foreman of the Sturgeon Bay shop and built cabinets, counters, windows, while performing other various custom craftsman's tasks. Tice also performed many non-skilled duties or general "saw shop" duties, including cutting of lumber, waiting on customers, and shoveling snow when required. The evidence demonstrates that because Lampert Yards was not a particularly large organization (it employed approximately 340 people in 36 yards), some of the employees' duties in the yards overlapped. In 1977, because of financial reasons, Lampert Yards decided to move its Sturgeon Bay facility to a smaller location in the Sturgeon Bay area.

applicable where there is no direct evidence of age discrimination. This is such a case.

**2.** In *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court explained that when the burden shifts to the employer to offer a justifiable non-discriminatory reason for its actions, the employer bears only the burden of production and not the burden of persuasion. *Id.* at 254–55, 101 S.Ct. at 1094–95.

**3.** Tice contends that it was improper for the district court judge to enter judgment notwithstanding the verdict since Lampert Yards, at the end of the presentation of evidence, mistakenly requested that the action be dismissed under

Fed.R.Civ.P. 41 rather than requesting a directed verdict. While Tice is correct in stating that Lampert Yards mistakenly moved to dismiss the case under Fed.R.Civ.P. 41, it is clear that the district court, and even the parties arguing the motions, considered Lampert Yards' request a motion for a directed verdict. Where all parties treat the proceedings as "in effect, a motion for directed verdict," there is a sufficient basis for the district court to later entertain the motion for judgment notwithstanding the verdict. *See Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 577 (7th Cir. 1976).

At the time of the move, the defendant was contemplating whether to continue operating a millshop at this new location. After considering the issue, Lampert Yards decided to continue the millshop operation at the new location on a much smaller scale. The new shop was equipped with less equipment and Tice apparently was the only person employed full time to work in the millshop.

Tice testified that he was terminated on July 17, 1980 when he was called in to the Sturgeon Bay office and Mr. Alger, the manager of the Sturgeon Bay facility, told Tice that he had some "good news and bad news." The bad news was that the millshop would be closed and Tice terminated, but the good news was that there was a possible job opening with a shipbuilder in Sturgeon Bay. At trial there was conflicting evidence if at this meeting Tice was offered a truck driving job with Lampert Yards. Mr. Frank Hougas, division manager of Lampert Yards, testified that he asked Tice whether or not he was interested in the truck driving job if one should become available, but that Tice declined the offer and stalked out of the office. Tice, however, testified that no such offer was made to him at the time of termination; rather, he was later informed of the job offer by Alger, but that Alger, on his own, had told the Lampert Yards officials that he did not believe that Tice would be interested in the job. At the time of his termination, Tice had worked for Lampert Yards for some nine calendar years and was the highest paid hourly worker in the Sturgeon Bay Yard at $6.30 per hour; Lampert Yards' pension plan required ten years of service before any benefits would vest. Tice testified that when informed he was being laid off he asked about his pension benefits and was told by the officials that the matter would be looked into. Tice was initially denied his pension benefits apparently because he had worked only nine

calendar years for Lampert Yards; however, it was later determined that he in fact did qualify for pension benefits since he had accumulated the necessary ten years of service.[4]

Tice also testified that following his termination he went back to Lampert Yards' Sturgeon Bay facility on three or four occasions and had an opportunity to observe Bill Warwick, a part-time worker in the millshop during Tice's tenure, doing custom millwork. Mr. Warwick, who Tice contends replaced him in the millshop, also began his career with Berns Brothers Lumber Co. in 1967, prior to its purchase by Lampert Yards in 1971. Warwick testified that his duties with Lampert Yards before Tice's termination consisted of driving truck and helping Tice in the millshop, but that his primary responsibility was driving the company truck. Following Tice's termination, the evidence discloses that Warwick's duties primarily consisted of truckdriving; however, he also cut lumber and performed a number of millwork tasks in the shop. The defendant Lampert Yards admits that for approximately ten months following Tice's termination, some millwork was done in the shop; however, it contended that such work was performed only for customers who had insisted that custom millwork be done. It was uncontested at trial that at the time of Tice's termination a lock was placed on the door to the shop and a closed for business sign placed in its window. Ten months after Tice's termination, all of the specialized millshop equipment was sold and only the saws used for cutting lumber in the yard remained. According to Lampert Yards, the continuing pattern of financial losses in the Sturgeon Bay millshop operation forced its closure.

■ In this case, the district court observed at the end of the presentation of evidence that the plaintiff's proof of replacement was "very thin." This observa-

**4.** An employee is given one year of credit going toward the ten-year requirement if he works at least 1,000 hours in a calendar year. While Tice had only worked a total of nine calendar years for Lampert Yards at the time of his termina- tion, he accrued ten years of service as he had worked two half-years (from July 1971 to December 31, 1971 and January 1, 1980 to July 17, 1980) in which he had accumulated the necessary 1,000 hours of service.

tion is supported by the fact that following Tice's termination as a skilled carpenter no new replacement was hired. Further, Mr. Warwick's duties after Tice's termination did not significantly change from his duties before Tice's termination, and there is no evidence of any extensive detailed millwork being performed in the shop following Tice's departure. Mr. Kosmoski, the present manager of the Sturgeon Bay facility, testified that Warwick, following Tice's termination, spent approximately 15 percent of his time in the shop doing millwork, prior to the equipment being sold, while Warwick's primary duty continued to be driving the company truck. Warwick, who testified for the plaintiff, confirmed that his primary duty before and after Tice's termination was to drive the company truck. Further, the evidence established that Lampert Yards phased out the entire millshop operation soon after Tice's termination. However, even if we would assume that the evidence presented was not insufficient to establish the fourth element of the plaintiff's *prima facie* case, i.e., replacement, Lampert Yards offered a valid justification for the termination of Tice.[5]

■ Lampert Yards' justification for the termination of Tice was simple—the millshop that Tice operated for Lampert Yards at the Sturgeon Bay facility was a losing financial proposition.[6] At trial, Lampert Yards introduced a document into evidence, apparently prepared for the hearing before WILHR since it was dated 6/21/82, demonstrating that the operating costs of the millshop were greater than the income it generated over a 5½ year period prior to Tice's termination.[7] Lampert Yards also introduced a memo, written in 1977, from Frank Hoagas, a division manager for Lampert Yards, to the general office questioning the financial viability and continued use of the millshop at the Sturgeon Bay yard. Since Lampert Yards was planning on moving the Sturgeon Bay facility to a new site in the area, the memo recommended that Lampert Yards consider eliminating the millshop because of its continued unprofitability.[8] As the district court noted in its opinion, "[t]he entire content of Defendant's Exhibit 3 indicates that in early 1976 Lampert was genuinely concerned about the profitability of the millshop and casting about for ways of divesting themselves of a losing entity." Further, a memo from Hoagas to Ed Alger, dated July 19, 1977, calls upon Alger to increase the charges for the millwork done at the Sturgeon Bay facility and to "sit down with Bob Tice and cover the problem in the future of the shop at the new loca-

5. From our reading of the record, it appears that this may not be the type of age discrimination case where one worker replaces another, but rather the employer is attempting to reduce his workforce to meet the demands of an ever-changing economic climate. If this is so, then the fourth element of the *prima facie* case, i.e., replacement, may not be required in order for the plaintiff to establish a *prima facie* case. *See Williams v. General Motors Corp.,* 656 F.2d 120, 128–29 (5th Cir.1981).

6. Tice asserts that the company failed to consider various intangibles, such as the millshop's ability to attract customers, etc., when calculating the losses incurred by the millshop. However, it is not the district court's duty to determine the validity of the defendant's business decision so long as its decision was made in good faith. *See Havelick v. Julius Wile Sons & Co., Inc.,* 445 F.Supp. 919, 926 (S.D.N.Y.1978). There is no evidence in the record that Lampert Yards' decision was not made in good faith.

7. Pursuant to this analysis, the estimated shoploss for the 5½ years represented was:

| | |
|---|---|
| 1975 | $10,915.48 |
| 1976 | 4,070.67 |
| 1977 | 3,232.20 |
| 1978 | 9,038.83 |
| 1979 | 8,883.82 |
| First half of 1980 | 4,967.49 |

(termination occurred 7/19/80)

8. In this letter he notes that the labor charged out in 1975 was significantly less than the labor paid to its workers at the millshop in Sturgeon Bay. He does remark that there was improvement in 1976 but that Lampert Yards was not getting any revenue for the heat and electricity used in the shop. He also comments that the manager should make sure that employees in the shop, such as Tice, are doing chargeable, instead of "mickey mouse" work.

tion...."[9] Although Tice stated at trial that no one ever discussed the millshop's unprofitability with him, this testimony was contradicted by his earlier deposition wherein he stated that he had been told a year prior to his termination that the shop was operating at a loss.

■ Ultimately, Tice attempted to establish that the Lampert Yards' desire to trim an unprofitable segment of its business was merely a pretext and that the true reason for his termination was because of his age. In this regard, Tice reiterates that he was terminated after nine years of service and points to the Lampert Yards' retirement plan which states that before the pension benefits vest, the person must be employed for ten years. He contends that his termination just prior to the vesting of his pension benefits demonstrates the requisite age discrimination, and that Lampert Yards granted his pension benefits only after he began his action before the state administrative body. However, Hoagas and Chown, the two management persons from Lampert Yards who met with Tice to inform him of his termination, testified that although they were aware of a ten-year

vesting employment, they did not review Tice's employment file prior to the termination conference and that Tice's age was neither mentioned much less considered in their discussion concerning the millshop. Hoagas' and Chown's testimony concerning the fact that they were not specifically aware of Tice's age or his pension rights was not contradicted by Tice since he testified that when informed of his termination he asked about his pension benefits and was told by Hoagas that it would be looked into. Initially, Tice's pension benefits were denied; however, it was later determined by the administrator of the plan, who was neither an employee nor affiliated with Lampert Yards and who controlled the pension determination decision, that a mistake had been made and that Tice was in fact entitled to his pension since he had ten years of vested service.[10] The only evidence that we can discern from the record to support the jury's verdict against Lampert Yards is the initial mistake made regarding Tice's vested pension benefits.[11] Under the facts of this case, the initial erroneous denial of the pension benefits cannot support the jury's verdict finding

---

9. Also, in a memo from Robert Twelles, Lampert Yards' sales manager, to Hoagus concerning the move to the new location, Twelles states that the only way in which Lampert could move the millshop to the new location would be for the shop to start making a profit immediately. He concludes his memo by stating "[i]f we can't do it now, then we will just forget about the shop."

Plaintiff challenges Exhibit 3's authenticity and the district court's reliance on this exhibit as untrustworthy as it was not presented to the WIHLR during the initial administrative hearing. However, we believe the exhibit presents credible evidence and is not wholly untrustworthy since the exhibit is corroborated by Lampert Yard's other exhibits disclosing the continuing pattern of losses. Further the exhibit is supported by the fact that Lampert Yards did physically close the shop after Tice was terminated because of financial losses.

10. According to page 6 of the pension plan, in order for the pension to vest, an employee was required to have ten years of vesting service. A person was credited with one year for each 1,000 hours worked in a calendar year. Under this calculation, Tice had fulfilled the ten-year requirement. *See supra* note 4.

Section 10 of the "Lampert Yards Retirement Plan" provides that "The Equitable [the Equitable Life Assurance Society of the United States] and not the Company [Lampert Yards, Inc.] will be responsible for the payment of all benefits...."

11. This case is distinguishable from *Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715 (E.D.N.Y. 1978), which Tice relies on to support his position that the reason he was terminated was so that Lampert Yards could avoid paying his pension. In *Marshall,* there was extensive evidence that the defendants closed its business and terminated its employees and then reopened with two younger employees who did the same type of work as the plaintiff. The evidence in that case demonstrated that the economic reasons given by the defendants were a mere pretext used in order to avoid having to pay the higher salary and future pension benefits to the plaintiff. However, in this case it is clear that Lampert Yards permanently closed a portion of its Sturgeon Bay facility because of its continued unprofitability and that the only employee who did substantially all of the highly skilled millwork (Tice) was terminated because his services were no longer required.

that ADEA had been violated where the evidence demonstrates that Tice was terminated because the millshop that he managed for the defendant was closed because of its continuing pattern of losses.[12]

■ We agree with the finding of the district court that the plaintiff failed to carry his burden of persuasion establishing that he was terminated because of his age. Throughout the shifting burden of production of evidence the plaintiff ultimately bears the burden of persuasion that his age was the determining factor in his discharge or "but for" his age he would have been retained as an employee. *See, e.g., La Montagne,* 750 F.2d at 1409; *Golomb v. Prudential Ins. Co. of America,* 688 F.2d 547, 551 (7th Cir.1982); *Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *Smith v. University of North Carolina,* 632 F.2d 316, 333 (4th Cir.1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979). The evidence demonstrates, from a financial standpoint, that the millshop was a losing proposition and that Tice was the person who did the majority of the millshop work. The parties dispute the question of whether Tice was ever offered other employment; but from our review of the evidence, we believe it is clear that no position was available *at the time* of his termination. Hoagas testified that he extended a future job offer to Tice to work as a truck driver should a truck driving job become available. Tice contends that such an offer was never directly made to him; rather, Tice testified that Alger had told him that Hoagas and Chown had asked Alger whether Tice would be interested in such a job but that Alger had told them that he would not.[13] A Mr. Kosmoski, the present manager of the Sturgeon Bay facility who succeeded Mr. Alger, testified that he had done no additional hiring at the Lampert Yards Sturgeon Bay facility until the summer of 1982, and then it was only part-time help. Hoagas also testified that it was not and had never been the policy of Lampert Yard to bump one employee in favor of another.

■ The underlying thesis of the plaintiff's case appears to be that if the millshop did in fact incur substantial losses and Lampert Yards was justified in shutting it down, then Lampert Yards had an affirmative duty to retain Tice by creating another job or by bumping another employee, presumably Warwick. However, "[t]he ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group." *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981). The ADEA was not intended to legislate seniority rights where none exist in the contract of employment. *See id.* at 130 n. 17; *Trembath v. St. Regis Paper Co.,* 753 F.2d 603 (7th Cir.1985) (summary judgment is appropriate where plaintiff fails to show that there was another available job and that he/she applied and was qualified for that job). *Cf. Trans World Airlines, Inc. v. Thurston, et al.,* —— U.S. ——, ——, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). As the district court found "Lampert had no obligation to maintain a losing shop simply because Bob Tice had been there nine ... years. The evidence was that defendants operated some 32 yards with this unit and

---

**12.** Tice also argues that an advertisement placed in the local paper, the *Door County Advocate,* on June 16, 1983 by Lampert Yards supports his contention that Lampert Yards has continued to do millwork and, thus, Lampert Yards' proffered reason for his dismissal was simply a pretext used to cover up the fact that he was dismissed because of his age. In this advertisement, Lampert Yards states "Carpenter Shop for Custom Millwork." However, this advertisement itself does not establish that Lampert Yards has continued to perform millwork at the

Sturgeon Bay facility; rather, Lampert Yards has another facility at Sisters Bay in Door County that does millwork (the only facility that Lampert Yards owns that still operates a millshop).

**13.** Tice's testimony that the possible job offer was made to Alger but not to him is consistent at least with the fact that Lampert Yards' management did in fact make some type of offer.

the Sister Bay yard being the only units with millshops attached. Defendant's decision to close this vestigial shop [at Sturgeon Bay] is a perfectly legitimate management decision. All it cannot do is discriminate on the basis of age in making that decision. There did not appear to be any evidence that it had."

### III.

The district court's granting of judgment n.o.v. is affirmed. Thus, we need not address the issues of front pay and attorney fees raised by the appellant.