**Dennis GROHS, Plaintiff,**

v.

**GOLD BOND BUILDING PRODUCTS, a DIVISION OF NATIONAL GYPSUM COMPANY, Defendant.**

No. 84 C 7999.

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1986.

Kathleen Baliunas, Chicago, Ill., for plaintiff.

Richard E. Lieberman and William M. O'Reilly, Ross & Hardies, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Both sides in this age discrimination case have moved for summary judgment. Each supports his motion with exhibits, depositions and affidavits, most of which tend to shed more heat than light on the question of whether age was a determining factor in defendant's decision to fire plaintiff. Because only a trier of fact can sort out what happened, both motions are denied.

### I. Facts

Plaintiff's complaint asks for a finding that he was discharged illegally because of his age and also that the discrimination was "willful." Defendant denies the allegations and says that plaintiff was terminated because his abrasive personality would not fit into the new management style which it was introducing. A remarkable amount of the material submitted, extending even to portions of the deposition transcripts, is argumentative, directed at the opposing attorney. What follows are the most significant facts to the extent this court has been able to extract them.

Defendant Gold Bond, a division of National Gypsum Company, manufactures wallboard. Plaintiff Dennis Grohs began his employment at defendant's plant in Waukegan, Illinois, in 1961. He became a foreman in 1968, mill superintendent in 1973, and board plant superintendent in 1979. His superiors consistently rated him competent at each annual review from 1969 on, and consistently gave him significant raises in pay. On the other hand, he seems to have been distinctly unpopular with oth-

---

er employees, both his fellow supervisors and those he supervised. According to Gold Bond's evidence, for example, at a June 1981 supervisors' dinner Grohs attempted to molest one female employee and propositioned another (Grohs denies both incidents). His subordinates apparently accused him of racist attitudes as well as insensitivity in general. The annual reviews, however, show only suggestions that he improve his supervisory style by, for example, taking courses in human relations. He survived the layoff of several supervisors in October 1981 and was given a raise for 1982. When Gold Bond decided to shut down its Waukegan facility in February 1982 because of a softening market for wallboard and spotty profitability, as well as labor difficulties, Grohs was one of only four employees retained from the work force to watch over the inactive plant. He also was used to train workers at another plant for short periods.

Grohs' real difficulties apparently began when Gold Bond decided to reopen the plant in Spring 1983, and brought in Michael Ward from its Phoenix plant to oversee the startup. Ward's intent, according to his testimony, was to promote a "family and team" relationship between supervisors and hourly employees, in place of what he understood to be the former hostile relationship. Ward's supervisors gave him only 90 days in which to show success at Waukegan or the plant would be closed again. Ward had heard from persons formerly at Waukegan of Grohs' alleged incidents of sexual harassment and other difficulties, he says, and determined that he could not afford to gamble that Grohs would fit into the new management style. Ward also felt that some equipment in the plant had been inadequately maintained during the closure, even though Grohs had personally assured him that it was ready for production. Ward discharged Grohs in late April 1983, after three weeks in Waukegan, explaining that Grohs had had "people problems." Gold Bond's labor relations lawyer sat in on the firing. The plant resumed production shortly thereafter, made it through its 90-day trial and apparently is still producing wallboard, though

Ward has since been transferred to another plant.

Ward's account, however, is not the only evidence on the circumstances of Grohs' firing. Gold Bond maintains that when he was terminated Grohs was still board plant superintendent and he was not replaced. His duties were instead divided among several supervisory employees. However, there also is evidence that Grohs' actual position at the time of firing, and the position he would have occupied during the startup, was night security guard. During startup the plant only operated a day shift. Plaintiff thus fails to see the relevance of Grohs' alleged abrasiveness to his actual duties. Other evidence tends to show that Ward's management style included its own fair share of "people problems." There are also some indications of problems in production during the startup which may have been traceable to an inexperienced staff. Further, Robert Sarvis, the former managing director of Gold Bond, has testified in two affidavits that during the spring of 1983 Robert Spitz, vice-president of operations, had developed a plan to discharge a number of employees over the age of 45 and bring younger persons into the company. Grohs was 51 in the spring of 1983; Spitz was the supervisor of both Ward and Sarvis. According to Sarvis, Spitz considered Grohs to be one of those older persons who ought to be discharged and told Ward so in April 1983.

## II. Discussion

The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see Western Air Lines, Inc. v. Criswell*, 472 U.S. ——, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). The statute provides for double damages if the violation is "willful." 29 U.S.C. § 626(b). The Supreme Court has defined a "willful" violation as one in which the employer ei-

ther knew his conduct was prohibited by the ADEA or acted in reckless disregard of whether or not it was prohibited. A good faith effort to comply with the ADEA cannot produce a "willful" violation. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

In spite of its broad coverage, the ADEA "was not intended as a vehicle for judicial review of business decisions." *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980). An employer may discharge an older employee for any number of legitimate business reasons, including an abrasive personality which affects his relations with other workers. *Parker v. Federal National Mortgage Ass'n,* 741 F.2d 975 (7th Cir.1984). To succeed, a plaintiff in an age discrimination suit must show discrimination, *i.e.,* that his age was, if not the sole factor, at least "a determining factor" in his employer's decision. *Id.* at 980.

The method a plaintiff may use to prove discrimination depends in part on the circumstances surrounding the violation he alleges and in part on the type of evidence he has. *Thurston,* 469 U.S. at ——, 105 S.Ct. at 622; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973). The Act applies to many types of employment decisions, for example not only ordinary hiring and firing, but also reductions in force and failure to rehire. The proof required of a plaintiff will vary somewhat, depending on the type of decision. *See, e.g., Tice v. Lampert Yards, Inc.,* 761 F.2d 1210 (7th Cir.1985) (reduction in force); *Caldwell v. National Ass'n of Home Builders,* 771 F.2d 1051 (7th Cir.1985) (failure to rehire). Further, a plaintiff may try to meet his burden of proof directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge, or he may use the indirect method of proof first developed for cases under Title VII of the Civil Rights Act, in which he initially seeks to raise a presumption of discrimination with a *"prima facie* case," the employer rebuts with a legitimate non-discriminatory reason for his action, and then plaintiff attempts to show that the reason was in fact a pretext. *Thurston,* 469 U.S. at ——, 105 S.Ct. at 622; *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984).

The case at bar requires consideration of all these differences. Grohs was discharged when his employer was seeking to put together a new management team for a troubled plant, but also at a time when the plant was going back into production after a long shutdown. His situation thus presents aspects of both a reduction in force and a failure to rehire. *Cf. Herman v. National Broadcasting Co.,* 744 F.2d 604 (7th Cir.1984) (film editors discharged and not rehired in shift to videotape). Grohs also offers direct evidence of discrimination with Sarvis' testimony and, alternatively, evidence which would be employed in the indirect method of proof. *Cf. La Montagne,* 750 F.2d at 1410 (plaintiff using both methods).

On a motion for summary judgment the facts and inferences must be considered favorably to the party opposing the motion. Since here both parties have moved for summary judgment, that means this court must look at the facts in a light most favorable to each party. This court determines that plaintiff has sufficient direct evidence of discrimination to maintain his action against defendants' motion for summary judgment. If a plaintiff carries his burden of proof with direct evidence of discrimination, the strength of his case on the indirect method of proof is irrelevant. *Thurston,* 469 U.S. at ——, 105 S.Ct. at 622. Plaintiff's only "burden" on defendant's motion for summary judgment is to present evidence sufficient to prevent defendant from demonstrating that no genuine issue of material fact exists. By offering Sarvis' affidavits, he has accomplished that. However, Gold Bond's evidence creates enough disputed issues of fact that plaintiff cannot be granted summary judgment on either his direct or his indirect proof.

## A. Direct Method of Proof

The elements of an ADEA action are vastly simplified when a plaintiff relies on direct evidence of discrimination. One is not concerned with whether the plaintiff has made out a *prima facie* case, or whether the employer's legitimate nondiscriminatory reason meets his burden of persuasion, or whether the reason is a pretext, or with any of the other trappings of the indirect method of proof since that method does not apply. *Thurston*, 469 U.S. at ——, 105 S.Ct. at 622. Instead, the plaintiff simply presents his evidence. The employer then may attempt to undermine the weight or value of that evidence as in any other legal proceeding. *La Montagne*, 750 F.2d at 1411–1412. Alternatively, he may try to prove one of the affirmative defenses under the statute itself, for example that "the differentiation is based on reasonable factors other than age" or that he discharged the plaintiff "for good cause." 29 U.S.C. § 623(f); *see Thurston*, 469 U.S. at ——, 105 S.Ct. at 623, *and Criswell*, 472 U.S. ——, 105 S.Ct. 2743 (construing statutory defense of age as a bona fide occupational qualification).

Grohs' direct evidence of discrimination is of course Sarvis' testimony that Spitz had a plan to replace older workers with younger and that Spitz told Ward to implement it starting with Grohs. Defendant mounts two attacks on this evidence: one on Sarvis' credibility and the other on the relevance of Spitz's desires since Grohs was fired by Ward.

The credibility argument is easily disposed of at this stage of the litigation. Sarvis' first affidavit tells of Spitz's plan, but only the second connects that plan to Ward and Grohs. Gold Bond asks this court to strike both affidavits since the second "contradicts" the first. The implication is that the second was produced solely to meet defendant's relevance argument. One of Gold Bond's briefs also mentions in passing that Sarvis left the company under a sizeable cloud, accused of serious misconduct. The appropriate response, however, is that all such questions of credibility are issues for the trier of fact and cannot be resolved at summary judgment.

The affidavits do not squarely contradict each other and even a series of supplementary affidavits is not contradictory as a matter of law. *See Prudential Insurance Co. of America v. Curt Bullock Builders, Inc.*, 626 F.Supp. 159, 168 (N.D.Ill.1985).

Gold Bond also points out that Ward, not Spitz, discharged Grohs, and so it is Ward's motives that matter in this ADEA action. In *La Montagne*, 750 F.2d at 1412–1413, the plaintiff offered statements from a senior vice-president and a division manager apparently favoring younger over older men. The court nevertheless upheld a judgment notwithstanding the verdict, holding that the jury could not reasonably infer that these statements were relevant to the motivation of the officer who actually discharged the plaintiff. But *La Montagne* is distinguishable since the officer who fired that plaintiff was the company president. There was no evidence to show, and no reason to infer, that his subordinates' attitudes had influenced his decision. Here, however, Spitz distinctly outranked Ward. A trier of fact might reasonably infer that Spitz's plan influenced Ward's decision even without the second Sarvis affidavit that directly connects the two. *Cf. Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) (impact of company president's attitude). Evidence about Spitz's attitude is therefore relevant.

Sarvis' testimony alone, then, is enough to enable plaintiff to survive defendant's motion for summary judgment. The allegation of willfulness also survives. Direct evidence of discrimination usually is a major factor in a finding of willfulness. *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 157 (7th Cir.1981). The presence of the company's labor lawyer at Grohs' termination also restricts any argument that the action was taken in ignorance of the law. *See Herman*, 744 F.2d at 607. Ward also admits to being aware of Grohs' approximate age. *See Syvock*, 665 F.2d at 147; *Herman*, 744 F.2d at 609. It does not follow, however, that the evidence entitles plaintiff to summary judgment. Looking at the facts from the point of view most favorable to defendant, Gold Bond and

Ward deny the truth of Sarvis' testimony. In light of defendant's other offerings, it is entitled to argue against Sarvis' credibility before a trier of fact. Gold Bond also offers evidence of Grohs' "people problems," which will be more fully discussed below. These problems, particularly in the context of the Waukegan plant's crucial 90–day trial, could be found a reasonable factor other than age, or a good cause for discharge. Following the standards for summary judgment, neither party prevails using the direct method of proof.

## B. Indirect Method of Proof

The indirect method of proving employment discrimination first set out in *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, is more complex. The plaintiff first seeks to prove a *prima facie* case of discrimination, which varies somewhat depending on the facts of the case, but in a discharge case usually means (1) he was in the protected class of persons age 40 to 70, (2) he was doing his job well enough to meet his employer's legitimate expectations, and (3) in spite of his performance he was discharged. Except in a reduction-in-force situation, he must also show that (4) he was replaced by a younger person (or, in a failure-to-rehire case, that a younger person was hired for a position for which he was qualified). *La Montagne*, 750 F.2d at 1409; *Stumph*, 770 F.2d at 96. A *prima facie* case gives rise to a presumption of discrimination, which defendant then seeks to rebut by articulating a legitimate nondiscriminatory reason for the discharge. If defendant produces such a reason, then the plaintiff must prove that the reason given was merely a pretext to cover discrimination, for example by showing that the reason is not believable or that discrimination was the likelier motive. *La Montagne*, 750 F.2d at 1409; *Golomb v. Prudential Insurance Co. of America*, 688 F.2d 547 (7th Cir.1982).

This court has already determined above that Gold Bond's motion for summary judgment cannot be granted. However, plaintiff also could not receive judgment as a matter of law on that evidence alone. We now examine the facts as they would appear using the indirect method of proof, to see if plaintiff could yet prevail at this stage. Because there are disputed issues of fact, he cannot.

Of all the elements of the indirect method of proof, only two are undisputed: that Grohs was in the protected class, and that he was discharged. Gold Bond maintains that plaintiff has no *prima facie* case in part because he was not replaced by a younger person. That argument, however, is not decisive. In fact, defendant says that Grohs was not replaced at all. Instead, in the new management philosophy, the duties of board plant superintendent were parceled out among several persons. If true, then the factual situation is sufficiently close to a reduction in force so that Grohs would not be required to prove the fourth part of a *prima facie* case. If a person's job is eliminated, he obviously cannot show that he was replaced by anyone, younger or older. He nevertheless may be a victim of discrimination if age was a determining factor in deciding who would stay and who would go. In such cases, then, a plaintiff need not show replacement. *Stumph*, 770 F.2d at 96–97.

On the other hand, if Gold Bond was streamlining its operations, that could impact on the third part of the *prima facie* case. Grohs points to his annual reviews, and his consistent raises, as evidence that he was performing up to his employer's legitimate expectations. For purposes of winning a summary judgment, that may not be enough. *Cf. La Montagne*, 750 F.2d at 1414. A change in the nature of operations at a plant which is unprofitable is a perfectly legitimate business decision. Once the decision to trim is made, then the employer's expectations may legitimately rise to some extent. The Seventh Circuit in *Tice*, 761 F.2d at 1217, made it clear that what matters are the circumstances at the time of termination. The plaintiff there, a mill shop foreman, argued to no avail that the retention of a younger employee to drive the company truck when the mill shop was shut down, rather than himself, was an ADEA violation. The court noted that an employer may legitimately retain

only those persons best qualified for, or already occupying, the limited number of positions it still has. The ADEA imposes no affirmative duty to create a job or bump another employee for the benefit of an older worker, even if that worker has performed competently. *See also Herman,* 744 F.2d at 609. Gold Bond offers evidence that Grohs had consistently been weak in employee relations, normally an important skill for a supervisor, and that he had recently failed in some maintenance tasks while the plant was shut down. An inference that Grohs was not qualified to take a place on the new management team would not be far-fetched.

In any case, the shift to a new management style in which ability to relate to fellow employees would be highly valued, plus Grohs' apparent track record of abrasiveness, constitutes a legitimate nondiscriminatory reason for the discharge. In the indirect method of proof, an employer faced with a *prima facie* case has merely a burden of production. Virtually any reasonable articulation of a nondiscriminatory justification for the discharge places the burden back on the plaintiff to show pretext. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Seventh Circuit has already considered facts quite similar to those in the instant case more than enough to meet that burden. In *Parker,* the plaintiff, a senior loan representative, had consistently been rated "Excellent" or "Superior," though the records also noted difficulty in interaction with subordinates. He survived one reorganization of management but not the next. The employer thought others were more qualified. The plaintiff's personality flaws alone were a legitimate nondiscriminatory reason for the decision. 741 F.2d at 977, 979. *See also La Montagne,* 750 F.2d at 1414.

Grohs would then have the burden of showing that the reasons Gold Bond offers are pretexts. He need not demonstrate that the reasons have no basis in fact. *Golomb,* 688 F.2d at 551. Rather, he can show that they did not really motivate the discharge, or that even if they were factors, age must have been a determining factor, because standing alone they were not enough to motivate a discharge. Evidence which shows that the events the employer cites were so far removed in time that they could not have been the whole cause of the discharge, or that the reason given applied with equal force to another employee who was not fired, tends to show pretext. *La Montagne,* 750 F.2d at 1414–1415. Since this case has aspects similar to a failure to rehire, Grohs can also attack the reasons with evidence that those who were actually given positions were less qualified and younger than he was. *Herman,* 744 F.2d at 609–610.

Unquestionably Grohs has some evidence which tends to show pretext. The incidents of alleged sexual harassment of female employees, for example, came in June 1981, while Grohs was not discharged until April 1983. And, while general evidence of job competence used to establish the *prima facie* case cannot merely be repeated in an effort to show pretext, *La Montagne,* 750 F.2d at 1414, nevertheless it is striking that Grohs not only was not formally reprimanded after the alleged incidents, but also survived one layoff and was given another competent rating and raise. Indeed, Grohs became one of the few persons to keep a job after the plant was closed. Plaintiff also supplies evidence tending to indicate that the flaw of "people problems" applied with equal force toward Ward himself. Apparently all the persons who did receive supervisory positions in the revitalized Waukegan plant had fewer years of experience than Grohs. Also, Sarvis' testimony about Spitz's negative attitude toward older workers is of course relevant to a showing of pretext. *See Stumph,* 770 F.2d at 96; *Herman,* 744 F.2d at 609.

The question, however, is whether plaintiff has eliminated all disputed issues of material fact so that this court could grant him judgment as a matter of law. For that purpose this court must draw all reasonable inferences in favor of Gold Bond. *See United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). From that point of view, as noted above, one cannot even be sure that Grohs has

established a *prima facie* case. A trier of fact could reasonably infer that Gold Bond had decided to shift its management style from one of relative insensitivity toward workers' needs and toward their complaints of sexual or racial harassment, to one which showed more concern. That would be a legitimate business decision, and, indeed, the public policy against discrimination would encourage greater employer sensitivity to sexual or racial slurs by supervisors. Grohs' history of abrasiveness—no significant handicap under the old style—could have strongly tended to disqualify him for supervisory work under the new. The "people problems" would not have been a major issue while the plant was shut down, but they could have loomed large as it moved toward resumption of production, especially if the plant had only 90 days in which to prove itself. It hardly seems appropriate at summary judgment to penalize an employer under the ADEA for what might have been an effort to comply with the spirit of Title VII of the Civil Rights Act.

Much the same can be said of plaintiff's efforts to show pretext. He has, for example, supported with his own and other's affidavits the stance that his actual position at the time of firing was security guard. Gold Bond denies it. In any case, that evidence cuts two ways. On one hand, if Grohs was a nighttime security guard, then it is more difficult to believe that "people problems" were sufficient reason to fire him. On the other, it shows that management was being revamped. If Grohs was qualified, he was qualified for board plant superintendent. Gold Bond had no duty to make him a security guard. *Cf. Tice,* 761 F.2d at 1217. Plaintiff also does not deny the existence of maintenance problems when Ward began to reopen the plant, but, rather, seeks to place them outside Grohs' responsibility by pointing to the time Grohs spent away from Waukegan on company business. However, an employer's general fairness in employment decisions is not the question in an ADEA action. Ward testified that he asked Grohs if some machinery was ready to make wallboard; Grohs said it was, and it was not.

Ward could have decided that Grohs could not be trusted to inform himself before speaking. Fair judgment or not, given the pressures of the startup, a trier of fact could find that incident alone a sufficient reason for Grohs' discharge.

These problems apply with special force to plaintiff's allegations of willfulness. Even if plaintiff could successfully show that Gold Bond's proffered reasons were pretextual, that showing would not require a finding that the violation was willful. At this stage he would need to eliminate all conceivable explanations for the discharge other than discrimination. *Syvock,* 665 F.2d at 157; *cf. Thurston,* 469 U.S. at ——, 105 S.Ct. at 626. As the above discussion shows, he has not.

As the Supreme Court has noted, determining intent and motive in a discrimination case "is both sensitive and difficult." *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). When a material issue of fact in a discrimination case involves any weighing of conflicting indications of motive and intent, summary judgment cannot be granted. *Stumph,* 770 F.2d at 97; *Kephart,* 630 F.2d at 1218. Plaintiff says he was fired because of his age and offers Sarvis' testimony in support. Defendant denies it and offers instead its desire to reopen the Waukegan plant with a new management team, using a new management style. Either motive could explain Grohs' discharge. They conflict, and this court cannot weigh them. In fact, the true reason for Grohs' firing is far from clear. *Cf. Herman,* 744 F.2d at 610. Such a case must go to a trier of fact; summary judgment cannot resolve it.

### III. Conclusion

Plaintiff's motion for summary judgment and defendants' motion for summary judgment are both denied.