996 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Antoinette COUGHLIN, Plaintiff-Appellant,
v.
ST. JAMES MEDICAL CENTER, et. al., Defendants-Appellees.
 No. 92-3162.
 United States Court of Appeals, Seventh Circuit.
 Argued March 29, 1993.*
Decided June 25, 1993.
 
 1
 Before FLAUM and KANNE, Circuit Judges, and REAVLEY, Senior Circuit Judge*
 
 ORDER
 
 2
 Antoinette Coughlin, who was born in 1925, worked as clerical supervisor of the environmental services department of the St. James Hospital Medical Center ("St. James") from early 1983 until the beginning of 1986. During Coughlin's tenure as clerical supervisor, St. James hired the consulting firm MEDCO to make recommendations for staff reductions throughout St. James. Subsequent to MEDCO's review, the environmental services department--or in more familiar parlance, the clerical pool--was reduced to six employees: Coughlin, her assistant Anne Kirkpatrick, two word processors, and two secretaries.
 
 
 3
 Toward the end of 1985, Richard Prendergast, vice-president of environmental services, found the clerical pool arrangement to be inefficient and decided to eliminate the pool. Coughlin learned of this decision early in 1986, and her termination was effective January 31, 1986. St. James also terminated Kirkpatrick, who was 26, at that time. Carolyn Duensing, a secretary over the age of forty, was transferred to the housekeeping department, where she had previously worked; and Carrie Walsh, a secretary not within the protected class, was transferred to the security department, where she had worked four hours a day for the previous year. Coughlin never expressed interest to the St. James's administration in the positions to which Duensing and Walsh were transferred.
 
 
 4
 After the decision to eliminate Coughlin's position, William Henning, Vice President of Human Resources, and Bernard Henry, Assistant Director of Personnel, directed Donna Gosciej, Supervisor of Employment and Employee Relations, to draw up a list of available positions for Coughlin. In early December, Gosciej advised Henning by memorandum of several job positions for which Coughlin might qualify. St. James maintained a list of vacancies for all positions available at the Hospital and posted the list at several locations. A subsequent memorandum from Gosciej dated January 2, 1986, advised Henry of two supervisory positions that Coughlin might fit and cautioned that these positions might soon be filled.
 
 
 5
 Within the first few days of 1986, Prendergast and Henning met with Coughlin to inform her of her impending layoff and to review the Hospital's layoff and recall procedures. At the meeting neither informed Coughlin of the availability of the two supervisory positions. Henning did tell her that the only position available was as a laboratory assistant and that he would advise her of other openings for which she might qualify. Coughlin did not apply for the laboratory assistant position because she did not feel qualified. Gosciej conducted Coughlin's exit interview on January 22; at that time Coughlin indicated that there were no open positions for which she qualified. According to Hospital lay-off procedures, Coughlin remained on a recall list and had priority status from February 1, 1986 to January 31, 1987. If St. James did not rehire her during that period, she would be terminated. Coughlin did not interview for any open positions at St. James while on priority status. After her termination, Coughlin brought suit under the Age Discrimination in Employment Act. 29 U.S.C. § 623(a) (1984). St. James moved successfully for summary judgment.
 
 I.
 
 6
 We review de novo the decision of the district court to grant summary judgment. Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 335 (7th Cir.1991); Doe v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991). We can affirm the district court's ruling on any basis finding support in the record. Dairyland Financial Corp. v. Federal Intermediate Credit Bank, 852 F.2d 242, 244 (7th Cir.1988). In examining the record, we draw all reasonable inferences from it in the light most favorable to the non-moving party. Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990). The non-moving party must identify specific facts to establish that there is a genuine triable issue. Unless we find evidence sufficient to sustain a jury verdict in favor of the non-moving party, we will affirm the grant of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).
 
 
 7
 To succeed on an ADEA claim, Coughlin must prove that she would not have been discharged "but for" her employer's motive. La Montagne v. American Convenience Prods. Inc., 750 F.2d 1405, 1409 (7th Cir.1984). Under the indirect method of proof that Coughlin is relying on, an employee must first establish a prima facie case of discrimination. By articulating lawful reasons for the discharge, the employer can rebut the presumption of discrimination. The employee can then overcome the employer's rebuttal by showing with either direct or circumstantial evidence that the articulated reasons are pretextual. Weihaupt v. American Medical Ass'n, 874 F.2d 419, 427 (7th Cir.1989). An employee may show that the employer's reasons for discharging the employee are unworthy of credence through evidence showing that the proffered reasons lacked a basis in fact, did not actually motivate the employee's termination, or were insufficient to motivate the discharge. Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir.1988).
 
 
 8
 Because St. James has conceded that Coughlin has established a prima facie case for purposes of summary judgment, it must articulate nondiscriminatory reasons behind her discharge. St. James contends that efficiency underlies the decision to liquidate Coughlin's department. Both Coughlin and her assistant Kirkpatrick were an unnecessary layer of supervision between department heads and the clerical staff. On the present facts, St. James's decision to implement a workforce reduction policy reflects its business judgment, which we do not second guess if made in good faith. See Aungst v. Westinghouse Elec. Corp., 937 F.2d 1216, 1220 (7th Cir.1991); Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1215 (7th Cir.1985). In addition, the Hospital's treatment of Coughlin did not materially differ from its treatment of her assistant Kirkpatrick, who was not within the protected class. Accordingly, Coughlin's discharge resulted from a general reorganization to trim costs and increase efficiency, which are legitimate non-discriminatory reasons for terminating an employee, even if she is within the protected class.
 
 
 9
 Coughlin maintains that the explanations offered by St. James advances are pretextual for a number of reasons: an inexplicable delay in her final evaluation, the inability of St. James to find her a position prior to her lay off, the Hospital's discriminatory treatment of her in comparison to other employees in her department, and the failure to mail listings to her of available positions.
 
 
 10
 To begin with, what turned out to be Coughlin's final evaluation was due in May of 1985. She did not see it until December. This occurrence, in the eyes of Coughlin, suggests that St. James was "taking care to devise a defensible way in which to eliminate her without later tripping over the documentary record." App.Br. at 17. After apparently misplacing it, Prendergast did not complete it until the fall; and on December 2 of that year, Coughlin even received a raise retroactive to May. What actually transpired is irrelevant, however, inasmuch as Coughlin acknowledged in her deposition that she did not think that age discrimination motivated the delay in her evaluation.[1]
 
 
 11
 Second, Coughlin argues, rather overzealously, that the Hospital "concealed" positions for which she may have been qualified and offered her only a job for which she could not qualify during the exit interview. In fact, Henning indicated that the only job available at the time of Coughlin's exit interview was that of a laboratory assistant. Contrary to plaintiff's belief, nothing in Coughlin's recollection of that conversation can be construed as the Hospital's offering her that position. Coughlin herself testified in her deposition that she did not feel qualified to serve in that capacity. Moreover, the fact that no Hospital representative specifically informed Coughlin of the availability of the two supervisory positions did not prevent her from learning of them by reading the posted listings and applying for a transfer prior to her lay off. There is a difference between discriminatorily impeding an employee's efforts to secure work and not actively assisting that employee. In any event, it is not even clear that Coughlin was actually qualified for either of those positions.
 
 
 12
 Third, Coughlin considers the fact that no one offered her the clerical positions that Duensing and Walsh were assigned to after the dissolution of her department to be further evidence of discrimination. She contends that the fact that the Hospital's reasons for placing those two employees in those positions were rational does not legitimate the failure of St. James to consider her for those positions. Although Coughlin maintains that she did not receive consideration because she was older, she also did not alert any Hospital administrators that she wished to be considered. Furthermore, Coughlin is overlooking the fact that one of the reassigned clerical employees (Duensing) was also in the protected class. Assigning these employees to departments in which they had previous experience is wholly consistent with the Hospital's efficiency rationale.
 
 
 13
 Finally, Coughlin argues that the Hospital's conduct during her year on priority return status also manifests pretext. St. James had a policy of mailing the listings of available positions to persons with priority return status. Gosciej testified in her deposition that it was her practice to have her secretary mail the most recent listings to those with priority status. Although Coughlin maintains that she did not receive any mailings during the year following her termination, she has not provided any evidence that anyone else on with priority status received these listings, or even that any of the listings were ever mailed. Apparently, no one thought to ask Kirkpatrick whether she had received any mailings during her year on priority status.[2]
 
 
 14
 Coughlin does attempt to salvage this contention by arguing that if an institution has a policy of mailing, for example, listings of available positions, then one could draw a reasonable inference that it has done so. Therefore, discrimination manifests itself circumstantially in every laid-off employee on priority status except for Coughlin apparently having received the list of job opportunities. This contention, however, ignores the fact that Coughlin bears the burden of persuasion throughout the entire burden-shifting process. La Montagne, 750 F.2d at 1409. Coughlin has not offered anything that would allow us to reasonably draw the inference she has put forth.
 
 
 15
 Because Coughlin has not established that any of the reasons offered by St. James for her lay off and termination are pretextual, the decision of the district court if AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 [1]
 The text of the pertinent exchange reads as follows:
 Q: Do you believe that he [delayed your evaluation] because of your age?
 A: No. I don't know why he did it.
 Coughlin Dep. at 218.
 
 
 [2]
 Although undoubtedly unintentionally, Coughlin's counsel miscontrues the deposition testimony of Prendergast with respect to Kirkpatrick's employment at the Hospital after her lay off. Kirkpatrick was called in not to interview, as Coughlin erroneously implies, but to fill in on a very occasional and very informal basis