Santiago AYALA, et al.,
Plaintiffs-Appellees,

v.

MAYFAIR MOLDED PRODUCTS
CORP., Defendant-Appellant.

No. 86–2110.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1987.

Decided Sept. 22, 1987.

Rehearing and Rehearing En Banc
Denied Oct. 20, 1987.

John A. Cook, John August Cook, P.C., Chicago, Ill., for defendant-appellant.

Yolanda Haces, Flader & Haces, Chicago, Ill., for plaintiffs-appellees.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In this appeal, arising from a claim under the Age Discrimination in Employment Act (ADEA or Act), 29 U.S.C. §§ 621–634, we are asked to review a jury verdict in favor of seven former employees of the Mayfair Molded Products Corporation (Mayfair). Mayfair argues that the district court erred in denying its motion for judgment notwithstanding the verdict because the verdict was not supported by substantial evidence. Mayfair also argues that the district court erred in denying its motion for a directed verdict because there was a lack of evidence from which the plaintiffs could establish the essential elements of their claim. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

### Background

#### A. *Facts*

Mayfair manufacturers molded products to its customers' specifications. Until July 1983, Mayfair's Schiller Park, Illinois plant had three manufacturing divisions: rubber molding, plastic compression molding, and plastic injection molding. There was also a finishing department. Each division had its own manufacturing process and had separate space, equipment and foremen. The manufacturing processes differed from one another in the type of material used, the time and manner of production, and the process of inspection and finishing. When an employee was hired he was assigned to one of the three manufacturing divisions. Employees were sometimes temporarily transferred from one division to another to help meet production demands or avoid short-term layoffs.

The plaintiffs were seven of the thirty-three permanent employees who worked in

the rubber division at the Schiller Park plant. The rubber division was closed in July 1983 because of a decreased demand for rubber products and a resulting decline in profitability of the division. Mayfair terminated all employees of the rubber division with the exception of three employees who had special skills. Those three employees were transferred to the plastics division. All seven of the plaintiffs were among those terminated. The plaintiffs were all between the ages of 40 and 60 years at the time of their discharge and had seniority of from seven to fifteen years with Mayfair. Two of the plaintiffs, Ezequiel Nevarez and Antonio Montoya, needed to work for only six more months before their pension benefits vested. The thirty terminated employees ranged in age from 24 to 61 years. Nineteen of them were over the age of 40. Two of the retained employees were 47 years old and one was 35 years old.

The closing of the rubber division was the first instance in which Mayfair had closed one of its divisions due to financial losses. In another instance, Mayfair had relocated its marine division from the Schiller Park plant to Tucson, Arizona. Mayfair offered the employees of that division the opportunity to relocate in Arizona. Few employees accepted Mayfair's offer. Mayfair did offer some of the remaining, non-relocating employees positions in the plastic compression and injection divisions of the Schiller Park plant on the basis of seniority.

### B. *The Complaint*

The plaintiffs claim that they were discriminated against on the basis of age in violation of the ADEA, 29 U.S.C. § 623(a)(1). They alleged in their complaint that Mayfair had a company-wide seniority system that it disregarded by dis-charging the plaintiffs rather than transferring them to other departments. They also alleged that each of the plaintiffs was able to perform jobs in different departments, but that Mayfair discharged them while retaining younger employees throughout the company. Further, the complaint stated that Mayfair has refused to reemploy the plaintiffs since their discharge. The plaintiffs claimed that the actions were willful [1] and based upon age in violation of the ADEA.

Mayfair filed a motion for summary judgment on the grounds that the plaintiffs could not establish a *prima facie* case of age discrimination or show that the closing of the rubber department was a pretext for their termination. The motion for summary judgment was denied.

### C. *The Trial*

Mayfair contended that it closed down the rubber division for financial reasons. The plaintiffs did not contest that the rubber division was closed for financial reasons, but argued that Mayfair took advantage of the closing to terminate the nineteen older employees. Tr. at 688–89.

During the trial, the plaintiffs sought to prove that Mayfair had a company-wide, interdepartmental seniority system, according to which Mayfair should have transferred them to another division, bumping less senior employees in the other divisions. Mayfair introduced evidence that the seniority policy was applied intradepartmentally, not company-wide. Tr. at 342, 352, 444. The president of Mayfair, Mr. Theis, stated that he could not transfer employees from the rubber division to another division because such a transfer would have violated the seniority rules. Tr. at 342. The plaintiffs introduced the company handbook, which contains the seniority clause.[2]

---

1. The district court did not allow the question of willfulness to go to the jury. It ruled that there was "insufficient evidence to support a finding of wilfulness in this case." Tr. at 639; *see* 29 U.S.C. § 626(b); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–30, 105 S.Ct. 613, 623–26, 83 L.Ed.2d 523 (1985). The plaintiffs have not appealed this determination.

2. The seniority clause in the company handbook stated in part:
   Mayfair regards employe seniority as a basic part of company policy. Seniority is the major consideration in promotions, layoffs, overtime, and, of course, vacations. Loss of seniority can only come if you are discharged, or you quit....
   Plaintiffs' Ex. 6.

Tr. at 87–88; R. 78, Plaintiffs' Ex. 6. The plaintiffs argued that, by its plain terms, the seniority policy was applied interdepartmentally. On the other hand, Mayfair's president, Mr. Theis, and its personnel director, Mr. Caruk, testified that the clause indicates that seniority applied only within each department. Tr. at 90, 342–44. The general plant manager, Mr. Urban, testified that seniority is departmentally applied for layoffs, but company-wide for "vacations and that sort of thing." Tr. at 496. Mr. Caruk and Mr. Urban testified that, when the marine division was moved to Tucson, some employees who chose not to go to Tucson were offered transfers to the plastics division according to seniority. Tr. at 41–42, 490. Additionally, employees were occasionally transferred from one division to another to help meet production demands or to avoid short-term layoffs. Tr. at 343, 446–47, 459. Evidence was presented that "bumping" had occurred when a worker with seniority was transferred to another division and took the place of a worker with less seniority, who was then laid off. Tr. at 252, 284.

Some of the plaintiffs testified that, at the time of their discharge, they asked for continued employment at Mayfair. Tr. at 159 (Antonio Montoya); Tr. at 178–79 (Fidencio Montenegro); Tr. at 196 (Santiago Ayala); Tr. at 252–53 (Ezequiel Nevarez); Tr. at 279 (Andres Favela). Mr. Caruk testified that the plaintiffs never asked to be retained. Tr. at 584–86. Mr. Caruk also testified that none of the plaintiffs filed an application for reemployment in any of the other divisions after they were terminated, tr. at 110, 536, 586–87, and that he only hired from applications, tr. at 112. Two of the plaintiffs testified that they returned to ask for employment at Mayfair after their discharge. Tr. at 160–61 (Antonio Montoya); Tr. at 254 (Ezequiel Nevarez). When one of the plaintiffs spoke with the personnel director a month after his discharge and asked him for employment, he was told that there were no openings.

However, two former rubber molders, both in their twenties, had been rehired as plastic molders only a few days before. Tr. at 160–61.

The plaintiffs also presented evidence at the trial that, soon after the closing of the rubber plant and their termination, openings arose in other divisions at Mayfair that they were qualified to fill. Indeed, one of the plaintiffs, Mr. Montoya, testified that the company's vice-president, Mr. Urban, had told him that, although the rubber division was closing, the company would soon expand in other areas and that it was "very likely" that some of the rubber division workers would soon "come back to work here." Tr. at 169–70. The plaintiffs also presented evidence that one employee under the age of 40 was retained when the rubber division closed and others under 40 were subsequently hired to perform work that the plaintiffs could have performed. Exhibits showed that, from July 30, 1983 to Sept. 1983, Mayfair filled eighteen positions. Defendant's Ex. 55. Of the fifteen employees hired between June 2 and August 10, 1983, only one was 40 years old and none were over 40. Plaintiffs' Ex. 17. The plaintiffs introduced evidence to show that, during their years of employment with Mayfair, they had had experience working in other divisions.

Mayfair made an oral motion for a directed verdict at the close of the evidence on the grounds that the employees had not shown that age was the determining factor in their termination or that the closing of the rubber department was a pretext for age discrimination. The motion for a directed verdict was denied and the jury entered a verdict in favor of the employees. Mayfair then filed a motion for judgment notwithstanding the verdict on the ground that there was not substantial evidence to support a verdict of age discrimination. Mayfair also filed a motion for a new trial for errors in instruction and improper argument.[3] Mayfair's motion for judgment not-

---

3. Mayfair states that, when it filed its Notice of Appeal, it was appealing from 1) the orders of the district court denying Mayfair's motion for judgment notwithstanding the verdict and mo-

tion for a new trial; 2) the judgment on the jury verdict; 3) the order denying the motion for a directed verdict; and 4) the order denying Mayfair's motion for summary judgment. Appel-

withstanding the verdict and its motion for a new trial were denied. Mayfair now appeals from the denial of its motion for judgment notwithstanding the verdict and its motion for a directed verdict at the close of all the evidence.

## II

### Discussion

#### A. *Standard of Review*

The denial of a motion for a judgment notwithstanding the verdict is subject to *de novo* review in this court. *La Montagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1410 (7th Cir.1984); *see Kier v. Commercial Union Ins. Co.,* 808 F.2d 1254, 1256 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987); *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 153 (7th Cir.1981). The standard of review is whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in a light most favorable to the party winning the verdict.[4] *La Montagne,* 750 F.2d at 1410; *Syvock,* 665 F.2d at 153. "Any conflicts in the evidence must be resolved in favor of the resisting party, and every permissible inference favoring that party which can be drawn from the evidence must be drawn." *Syvock,* 665 F.2d at 153.

> We do not judge the credibility of witnesses, and we do not reweigh the evidence as a jury would, attempting to find a preponderance on one side or the other. We do, however, weigh the evidence to the extent of determining whether the evidence to support the verdict is *substantial;* a mere scintilla of evidence will not suffice.

*La Montagne,* 750 F.2d at 1410 (citations omitted) (emphasis in original).

#### B. *Standard under the ADEA*

The plaintiffs' claim is one for age discrimination in a reduction-in-force situation under the ADEA. *See* 29 U.S.C. § 623(a)(1). As we have frequently noted, the plaintiffs' burden in an age discrimination case is to prove that they were discharged because of their age. *Bechold v. IGW Sys., Inc.,* 817 F.2d 1282, 1284 (7th Cir.1987); *La Montagne,* 750 F.2d at 1409; *Golomb v. Prudential Ins. Co.,* 688 F.2d 547, 550 (7th Cir.1982). The plaintiffs "must prove not that age was the sole factor motivating the employer to discharge him but that age was a 'determining factor,' in the sense that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 17 (7th Cir.1987) (quoting *La Montagne,* 750 F.2d at 1409); *see Mathewson v. National Automatic Tool Co.,* 807 F.2d 87, 89 (7th Cir.1986). As this court recently noted in *Mathewson,* 807 F.2d at 90, there are two methods of proof in age discrimination cases: direct and indirect. In the direct method, the plaintiffs present direct or circumstantial evidence that age was a determining factor in their discharge. *Id.* When the plaintiffs use the indirect method, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and applied to ADEA cases in *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1212 (7th Cir.1985), is employed. *Bechold,* 817 F.2d at 1284.

A *prima facie* case of age discrimination is established in a reduction-in-force situation when the plaintiffs: 1) show that they were within the protected age group (40–70); 2) show that they were adversely affected, either by discharge or demotion; 3) show that they were qualified to assume another position at the time; and 4)

---

lant's Br. at 5. Mayfair also states that it is now appealing only the orders denying its motion for judgment notwithstanding the verdict and its motion for a directed verdict. *Id.* Mayfair withdraws its appeal from the orders denying its motion for a new trial and its motion for summary judgment. *Id.*

4. The standards for reviewing the grant or denial of a directed verdict in an age discrimination case are the same—whether the plaintiffs presented substantial evidence from which a jury could have reasonably concluded that age was a determining factor in the defendant's decision to terminate the plaintiffs. *Jang v. Biltmore Tire Co.,* 797 F.2d 486, 489 (7th Cir.1986).

produce evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in making the employment decision at issue. *Id.; Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1424 (7th Cir.1986); *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir.1985). To fulfill the fourth requirement, the plaintiff must show that the employer has not treated age in a neutral fashion and that, on the evidence presented, a jury could reasonably conclude that the defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or that the defendant regarded age as a negative factor. *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

■ Once a *prima facie* case is established, the burden of production falls on the defendant to articulate a lawful, non-discriminatory reason for the action. *Bechold*, 817 F.2d at 1284. If the defendant meets that burden, the burden then falls back on the plaintiff to show "that the proffered reasons are a pretext, by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *La Montagne*, 750 F.2d at 1409; *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *Christie v. Foremost Ins. Co.*, 785 F.2d 584 (7th Cir.1986); *Dorsch*, 782 F.2d

at 1424–25.[5] Thus, under the burden-shifting approach, "if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent." *Graefenhain*, at 18.

## C. Application to the Facts of this Case

■ Mindful of these procedural and substantive standards, we now review the evidence presented at trial in the light most favorable to the plaintiffs. The plaintiffs maintain that the first two requirements of a *prima facie* case of age discrimination were established and undisputed. The plaintiffs are all between 40 and 70 years of age, and thus are within the protected age group. Moreover, it is undisputed that each of the plaintiffs was discharged. The plaintiffs also maintain that they had fulfilled the third requirement inasmuch as each was qualified, at the time of his discharge, to assume another position. They note that there were no arguments regarding poor performance on the part of any of the seven plaintiffs and that each of them received letters of recommendation. The plaintiffs presented evidence at trial that, at the time of their discharge, they were qualified to perform in at least one other position in the company.[6]

**5.** As the Supreme Court noted:

In saying that the presumption drops from the case, we do not imply that the trier of fact may no longer consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981).

**6.** The plaintiffs maintain that Mr. Ayala was qualified to work as a utility man or a hopper filler; Mr. Chaidez was qualified to work as a material handler, hopper filler or utility man; Mr. Favela was qualified to work as a hopper filler, material handler or molder; Mr. Montenegro was qualified to work as a utility man, a hopper filler or in the warehouse; Mr. Montoya was qualified to work as a molder in the plastic compression department (while assigned to that department he performed properly); Mr. Nevarez was qualified to work as a hopper filler, a plastic molder, or in the shipping room; and, Ms. Santillanes was qualified to work as an inspector, operator in injection molding or a punchpress operator.

The plaintiffs further contend that they produced evidence from which the jury could reasonably conclude that Mayfair consciously refused to consider retaining or relocating them because of their age. The plaintiffs, at their discharge interview, asked the personnel manager to allow them to work, even sweeping floors. They were told that there was no work for them. Shortly after they were discharged, two of the plaintiffs came back and asked for work; they were again told that there were no openings. Mayfair conceded at trial, however, that from July 30 to September 1983, eighteen new positions had been filled, while the plaintiffs had been told that there were no openings. The evidence showed that none of the new employees were over 40 years of age when they were hired. The plaintiffs contend that, if Mayfair had not intended to discriminate against them, it would have offered the available positions to them rather than hiring new employees 40 years of age and under. Additionally, they point to the evidence that the company in other, albeit somewhat factually different circumstances, had followed a rule of interdepartmental seniority. They characterize the company's handling of the present situation as a deviation from that practice. As to the issue of pretext, the plaintiffs argue that the evidence presented at trial proved that, while Mayfair had closed the rubber department for financial reasons, it took advantage of that closing to discharge employees within the group protected by the ADEA.

As we have already noted, our task on this appeal is a very limited one. We must determine "whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict." *La Montagne*, 750 F.2d at 1410. In the context of an age discrimina-

tion case, that standard requires that we determine whether the plaintiffs presented substantial evidence from which a jury could have reasonably concluded that age was a determining factor in the defendant's decision to terminate the plaintiffs. *Jang v. Biltmore Tire Co.*, 797 F.2d 486, 489 (7th Cir.1986). In performing this task, we must remember that "[j]ury verdicts are not to be overturned lightly. Before taking such a step, a reviewing court must not only ascertain carefully the governing law but also review, with the utmost care, the record of trial. In undertaking this latter task, we must tread carefully. Fact-finding is the jury's role...." *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1417 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987).

We have carefully reviewed the record. In our view, while this case was certainly hard-fought at trial, there is sufficient evidence to support the verdict. The jury reasonably could have found that, while the decision to close the rubber division was not itself based on age discrimination, Mayfair's refusal to allow the discharged workers to bump others with less seniority in the plastics division and Mayfair's hiring of younger workers when jobs became available shortly after the plaintiffs were discharged constituted discrimination based on age.[7] On this record, the jury was entitled to conclude that the proffered reasons for the refusal to allow the bumping— that seniority for that purpose was division-wide, not company-wide, and that the plaintiffs were not qualified to work in the plastics division—were unworthy of credence. *See Christie*, 785 F.2d 586–87. Accordingly, we must let the jury verdict stand.

### Conclusion

We believe that the district court properly concluded that the record contained suf-

---

7. We hasten to point out that a company's nonadherence to a seniority system does not, standing alone, constitute age discrimination. "[T]he seniority a given plaintiff has accumulated entitles him to no better or worse treatment in an age discrimination suit." *Williams v. General Motors Corp.*, 656 F.2d 120, 130 n. 17 (5th Cir.

Unit B 1981). However, deviations from an otherwise observed seniority system may, at least when combined with other circumstantial evidence, be relevant on the issue of whether the employer's decision was age-neutral or age-conscious.

ficient evidence to support the jury's verdict. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.