Roger **FUTRELL**, Plaintiff,

v.

**J.I. CASE, a Tenneco Company,** Defendant.

No. 88–C–1028.

United States District Court, E.D. Wisconsin.

Nov. 22, 1993.

**DECISION AND ORDER**

WARREN, Senior District Judge.

On July 16, 1993, following a four-day trial, a jury found that defendant J.I. Case, a Tenneco company ("Case"), had willfully discriminated against plaintiff Roger Futrell ("Futrell") on the basis of age in discharging him from employment on September 26, 1986, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and awarded the latter $132,788 in lost wages and benefits and $132,788 in liquidated damages. Pursuant to Rule 50(b), Fed.R.Civ.P., Case now moves to renew its motion for judgment as a matter of law, in the form of a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Case also moves for leave to file a reply to Futrell's response thereto. For the following reasons, both motions are granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Roger Futrell began working for defendant J.I. Case in 1974. Throughout his employment with Case, Futrell worked at the Wausau, Wisconsin plant as Manager of Manufacturing Engineering. In this position, Futrell reported directly to the General Plant Manager and was considered part of the General Plant Manager's staff, comprised by the Manager of Manufacturing, the Manager of Quality Control, the Materials Manager, the Plant Controller, and the Human Resources Manager. Futrell received generally favorable performance reviews during the time he worked for Case.

In February 1984, Dennis George was appointed General Plant Manager of the Wausau plant. Prior to this appointment, George had been the Manager of Manufacturing Engineering at defendant's Wichita, Kansas plant. George and Futrell were familiar to each other by virtue of their common employer and background in manufacturing engineering.

Shortly after George's arrival in Wausau, he and Futrell had a private conversation about George's promotion. They disagree over what was said. According to George,

Thomas A. Nelson, Nelson & Cole, Milwaukee, WI, for plaintiff.

Alvin R. Ugent, Podell, Ugent & Cross, Milwaukee, WI, for defendant.

Futrell expressed disappointment at not being promoted to General Plant Manager. According to Futrell, George raised the issue, stating that he understood if Futrell was upset and that he hoped there would be no hard feelings about George's promotion. Futrell claims that he told George that he understood the decision, did not have any hard feelings, and would be cooperative.

At first, George and Futrell had no major conflicts, though George testified that they did have occasional differences of opinion during this period. At the end of George's first year, he evaluated Futrell's performance, indicating that his "results achieved were above average," and that his "performance exceeded expectations in many areas." (Pl.Ex. 6).

In late 1984 or early 1985, George appointed Futrell to lead a major business undertaking in conjunction with Newport News Shipbuilding, one of Case's sister companies. George and Futrell agree that, because Case's business declined sharply in the 1980's, this project was critical to both the short-term and the long-term survival of the Wausau plant.

After Futrell's appointment as project leader, the confrontations between he and George increased; their relationship, however, remained relatively good. In early 1986, after the Newport News project had been underway for about a year, George prepared a "Key Manager Review" on Futrell. Therein, George again reported favorably on Futrell's performance. George did note, however, that Futrell "has a tendency when the pressure is on to blame other departments. Must learn to function as a team player. Attitude is strained under pressure." (Pl.Ex. 3). Pursuant to Case's policy, the Key Manager Review was never shared with Futrell. Instead, it was sent directly to the Racine, Wisconsin headquarters of the Company.

The Newport News Shipbuilding project was terminated abruptly in early 1986, and the viability of the Wausau plant again became questionable. George organized the Wausau workforce, the Wausau area community and the State of Wisconsin in a collective effort to convince Case's upper management to keep the Wausau plant open. George stated that he did not know whether these efforts proved to be successful or whether other factors were more persuasive. In any event, in late spring of 1986, Case decided to close two other plants in Terre Haute, Indiana and Bettendorf, Iowa and move their product lines to Wausau. This consolidation was referred to as "plant rationalization" and necessitated a complete renovation of the Wausau plant with a new plant layout, new equipment, and new manufacturing techniques.

In Wausau, this plant rationalization was referred to as Project 57. In May or June of 1986, George asked Futrell to serve as the project leader. Under Project 57, the Wausau plant was to be completely redesigned and reconfigured to do the work of three plants in a state-of-the-art manufacturing facility. Like the Newport News project, Project 57 was critical to the survival of the Wausau plant. Shortly after the project commenced, the relationship between George and Futrell became strained once again. Though the details of their testimony differed, every member of George's staff testified that he and Futrell had several heated disputes during the course of the project.

Two of these disagreements occurred at staff meetings, the last in late September 1986, just a few days before Futrell's termination. George's senior managers and their staffs attended this meeting. Therein, George grew angry in response to Futrell's challenge to his authority concerning how to staff the new operation. George and others testified that the exchange became heated and that Futrell went too far. As a result of this exchange, George abruptly terminated the meeting.

Thereafter, George telephoned his boss, Robert Riebau, and stated that the disharmony with Futrell had grown, and that, because Project 57 was very important, Futrell should be terminated. Riebau authorized George to terminate Futrell if necessary. Within the next several days, George worked out a severance package for Futrell with Human Resources Manager Larry Derks. On September 26, George summoned Futrell

to his office, where he and Derks advised Futrell of his termination.

On September 28, 1988, Futrell filed a complaint in the Eastern District of Wisconsin, alleging violations of the ADEA in his discharge from employment with Case on September 26, 1986, and seeking various relief.

On April 8, 1992, after a lengthy delay occasioned by discovery and the exigencies of the Court's calendar, the Court granted in part and denied in part Case's motion for summary judgment, dismissing Futrell's claim of non-willful employment discrimination.

Following another lengthy delay, Futrell proceeded to trial on the remaining willful discrimination claim on July 12, 1993. At the close of Futrell's case and again at the close of all the evidence, Case moved for judgment as matter of law pursuant to Rule 50(a). Both motions were denied.

On July 16, 1993, the jury found for Futrell in the total amount of $265,576. Judgment was entered by the Court on August 3, 1993.

On August 4, 1993, within the ten-day period prescribed by the rule, Case moved to renew the motion for judgment as a matter of law, or, in the alternative, a new trial, pursuant to Rule 50(b). On August 30, 1993, Futrell filed his response thereto. Asserting that said response "raises a number of issues which Defendant believes requires some response or clarification," (Motion for Leave at ¶ 2), Case filed a motion for leave to reply, and a reply brief, on September 14, 1993.

## II. DISCUSSION

### A. Motion for leave to file reply

Because a number of issues raised in Futrell's response merit further response or clarification, (Motion for Leave at ¶ 2), and whereas Futrell does not object, and pursuant to Rules 6(a & e), 7, 8 and 50(b), Fed. R.Civ.P., and Local Rules § 6.01(b), we grant Case's motion for leave to reply.

### B. Motion for judgment as a matter of law

#### 1. Legal framework

Essentially, Rule 50(b) states that, whenever a motion for judgment as a matter of law made at the close of all the evidence is denied, a verdict is returned, and the motion is timely renewed not later than ten (10) days after entry of judgment, "the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law...." Fed.R.Civ.P. 50(b). The standard applied to the renewed motion, known as a motion for judgment notwithstanding the verdict, is "whether there is substantial evidence to support the verdict, *i.e.*, whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict." *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 546 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989); *Mathewson v. National Automatic Tool Co., Inc.*, 807 F.2d 87, 90 (7th Cir.1986) (citing *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512–513 (7th Cir.1986); *Christie v. Foremost Ins. Co.*, 785 F.2d 584 (7th Cir.1986)). Because the quantum of evidence required is substantial, "a mere scintilla of supporting evidence will not suffice." *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984), *quoted in Perfetti v. First National Bank of Chicago*, 950 F.2d 449, 450 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992). In making this determination, evidentiary conflicts are resolved in favor of the party winning the verdict. *Perfetti*, 950 F.2d at 450; *Mathewson*, 807 F.2d at 90 (citing *Yarbrough*, 789 F.2d at 513; *Christie*, 785 F.2d at 586). Every permissible inference, moreover, is be drawn in favor of that party. *Perfetti*, 950 F.2d at 450; *Mathewson*, 807 F.2d at 90 (citing *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir.1985); *La Montagne*, 750 F.2d at 1409).

■ To resolve Case's motion, we must apply the foregoing standard to the particular evidentiary requirements of Futrell's age discrimination claim. To establish an ADEA violation, an employee must show that his employer took some adverse employment action against him on the basis of age. *Steffen,* 859 F.2d at 545. *See Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1423–24 (7th Cir.1976). To satisfy this burden, the employee must prove that his age was a determining factor in the challenged decision. *Perfetti,* 950 F.2d at 450; *Steffen,* 859 F.2d at 545; *Mathewson,* 807 F.2d at 89. A factor is "determining" if, but for the employer's discriminatory animus, the employee would not have suffered the adverse action. *Steffen,* 859 F.2d at 545 (citing *Dorsch,* 782 F.2d at 1423–24). An employee may attempt to meet this burden directly, by presenting either direct or circumstantial evidence that age was a determining factor in the adverse action, or indirectly, by establishing the same fact through resort to the shifting burdens of production method originally fashioned for Title VII cases and further articulated in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Steffen,* 859 F.2d at 545; *Ayala v. Mayfair Molded Products Corp.,* 831 F.2d 1314, 1318 (7th Cir.1987); *Mathewson,* 807 F.2d at 89–90; *Tice,* 761 F.2d at 1212–13. Under either method, however, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated remains on the employee. *St. Mary's Honor Center, et al. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Mathewson,* 807 F.2d at 90; *Johnson v. University of Wisconsin–Milwaukee,* 783 F.2d 59, 63 (7th Cir.1986). Thus, after trial on the merits, "the particular method of proof used is irrelevant; the main focus is simply on the ultimate question whether the plaintiff's age was a 'determining factor' in defendant's decision to terminate him." *Mathewson,* 807 F.2d at 90 (relying on *United States Postal Service v. Aikens,* 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 480 (7th Cir.1986)).

## 2. Analysis

■ At trial, Futrell proceeded by the indirect method discussed above, and hence was subject to the burden-shifting analysis of *Burdine* and *McDonnell–Douglas.* Thereunder, an employee must initially prove a *prima facie* case of age discrimination. *Tice,* 761 F.2d at 1212–13. To do so, the employee must show that: (1) he was a member of the protected class, namely employees forty years of age or older; (2) he was doing his job well enough to meet his employer's legitimate expectations; (3) he was discharged; and (4) the employer sought a replacement for him. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400–01. (7th Cir.1992). *See LaMontagne,* 750 F.2d at 1409 (adopting the analysis in *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979), *cited with approval in Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985)).

Futrell met his initial burden. Case stipulated to the existence of the first, third, and fourth elements of Futrell's *prima facie* case. (Defendant's Memorandum at 7.) As to the second element, the Court found, in denying Case's Rule 50(a) motion at the end of Futrell's case, that it had been sufficiently proven by Futrell's evidence that "he was meeting the legitimate expectations of the employer." (Tr. at 184–86.)

■ Once the employee proves a *prima facie* case, the burden of production shifts to the employer to offer a legitimate, nondiscriminatory reason for the termination. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747; *Tice,* 761 F.2d at 1213. As such, "[the employer] 'must clearly set forth, through the introduction of admissible evidence,' reasons for [the termination], which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of [the termination]." *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747 (citing *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95). Importantly, the employer's burden at this stage of the analysis is one only of production, not persuasion, *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95, the latter remains the em-

ployee's burden throughout. *Id.* at 253, 101 S.Ct. at 1093. *See Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 296 n. 2, 58 L.Ed.2d 216 (1978). *See generally* 9 J. Wigmore, *Evidence* § 2489 (3d ed. 1940) (the burden of persuasion "never shifts"). At this stage of the analysis, therefore, whether the employer's proffered reasons are subsequently discredited is irrelevant. Simply by producing evidence of legitimate nondiscriminatory reasons, whether ultimately persuasive or not, the employer sustains its burden of production. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2748.

■ Case, the Court finds, met this secondary burden by establishing, primarily through the testimony of Dennis George, General Plant Manager, and Larry Derks, Human Resources Manager, that the reason for Futrell's termination was his insubordination and inability to work with others. George testified, *inter alia,* that Futrell confronted him during staff meetings held to discuss Project 57, the plant rationalization project, and that he felt such confrontations were a challenge to his authority and bad for morale. Derks corroborated George's testimony, stating that George had identified his concerns about Futrell in a telephone conversation shortly before Futrell's termination. Derks also testified that he agreed with some of George's concerns, which he summarized in notes of their conversation. (Plaintiff's Ex. 2.) Derks's notes indicate that George was concerned that Futrell was, *inter alia,* "[v]ery aggressive ... when interfacing with peers & gen mgnt. if doesn't get his own way," (*id.* at ¶ 6), and "not participating as a team member." (*Id.* at ¶ 7.) Derks further testified that, as to the final staff meeting confrontation, he believed Futrell had "crossed the line," and that his behavior "verged on insubordination." Case's other witnesses, James Von Rueden and Donald Tucek, gave similar accounts. Even Futrell's own witnesses, Larry Schneider, Roger Josiger, and Gary Walker, testified to his confrontations with George; in fact, Josiger testified that he had never heard anyone talk to George the way Futrell had. Futrell himself conceded that he and George had had several disagreements in which their voices had been raised. As such, the Court finds, Case produced evidence of a legitimate, nondiscriminatory reason to terminate Futrell, namely that he was insubordinate and unable to work with others, particularly George. At least at this stage of the burden-shifting analysis, moreover, Futrell's claim that other evidence discredits Case's explanation, (Plaintiff's Response at 2–4), is inapposite. *See St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2748.

■ Once the employer meets its burden of production, "the McDonnell Douglas framework—with its presumptions and burdens—is no longer relevant.... The presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2749; *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094–95 & n. 10. The burden then falls back to the employee to show that the proffered reason is pretextual, by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered reason is unworthy of credence. *Perfetti,* 950 F.2d at 451 (citing *La Montagne,* 750 F.2d at 1409–10); *Ayala,* 831 F.2d at 1319; *Tice,* 761 F.2d at 1213. "[I]f [the employee] convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent." *Ayala,* 831 F.2d at 1319 (citing *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 17 (7th Cir.1987)). That the initial presumption drops from the case, however, does not mean that a court may no longer consider evidence previously introduced by the employee to establish a *prima facie* case. Though a satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the employee's initial evidence, that evidence, and inferences properly drawn therefrom, may be considered in resolving the issue of whether the defendant's explanation is pretextual. As such, there may be cases in which the employee's initial evidence, in conjunction with

effective cross-examination of the employer, will discredit the employer's explanation. *Ayala,* 831 F.2d at 1319 n. 5 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10). In this event, as Futrell's argument correctly implies, (Plaintiff's Response at 4), the employee's initial evidence, in conjunction with the factfinder's disbelief of the employer's explanation, may suffice to show intentional discrimination. *St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2749. Rejection of the employer's proffered reasons, therefore, permits the factfinder to infer the ultimate fact of intentional discrimination, and no additional proof is required. *Id.* at —, 113 S.Ct. at 2749.

### i. Discriminatory reason not shown more likely

■ The Court now finds that Futrell, despite favorable standards of proof, failed to meet his ultimate burden. First, he failed to prove that a discriminatory reason, more likely than Case's proffered reason, motivated his termination. To support his contrary argument, Futrell relied on several factors. To begin, Futrell relied on the fact that Case demoted a similarly-situated worker, namely Manufacturing Manager Roger Josiger, also fifty-three years old. (Plaintiff's Response at 5.) Based on Case's own authority, and contrary to Case's rather misleading assertion, (Defendant's Memorandum at 4), such an event, in conjunction with the subsequent replacement of said worker, appears technically to permit an inference of discrimination. *See Oxman v. WLS–TV,* 846 F.2d 448, 454 (7th Cir.1988) (an inference of discrimination may be created by an employer that demotes an older employee who was performing adequately and then seeks a replacement). Here, however, such an inference, even if permissible, was not reasonable. Nothing in Josiger's testimony, for instance, supports such an inference. Josiger himself never stated that he believed his demotion resulted from age discrimination. Josiger's replacement by Gary Walker does not support such an inference, either, because Walker was, according to Derks, about forty-nine years old, and, hence, himself a member of the protected class. In addition, George articulated a legitimate nondiscriminatory reason

for Josiger's demotion, namely that Walker was better-suited to Manufacturing Manager, and that Josiger was needed elsewhere. Corroborating that testimony, Josiger stated that he and George disagreed on important issues regarding manufacturing methods. Finally, the Court notes, Futrell offered no statistical evidence from which one might reasonably make any inference of discrimination about his termination in light of Josiger's demotion. *See Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1321 (7th Cir.1989) (basic evidence of other employment decisions cannot show discrimination absent further statistical evidence of the relative qualifications of the applicant pool and those hired). What statistical evidence does exist in the record, in fact, permits only a contrary inference. According to Derks, of the approximately seventy-five employees George transferred into the Wausau plant in 1986 and 1987, more than 80% were over the age of forty and thirteen were as old or older than Futrell and Josiger. (Defendant's Ex. 8.) In fact, at one of the Project 57 staff meetings, Futrell challenged George over the latter's plans to hire three additional tooling engineers; two were older than Futrell, the third less than one year younger. (*Id.*)

Futrell also relied on a comment allegedly made by George to Josiger in a private meeting in which they discussed the new cellular concept of manufacturing. George allegedly told Josiger that he was "not a forward enough thinker." (Plaintiff's Response at 5.) No inference of discrimination, however, can reasonably be drawn therefrom. On its face, the comment is silent as to age. In context, moreover, it plainly refers only to Josiger's preference for a traditional manufacturing layout, *i.e.,* a facility stratified by function rather than product, not his age. However interpreted, the comment has no evidentiary value as applied to Futrell. *See, e.g., McCarthy v. Kemper Life Ins. Co.,* 924 F.2d 683, 686–87 (7th Cir.1991) ("Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge"); *Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993) ("as we have held on

several occasions, a mere 'stray remark' is insufficient to establish age discrimination").

■ Futrell further relied on an alleged comment by George that he wanted "sharp, young people" instead of "older people that aren't delivering as much work." (Plaintiff's Response at 5.) Even assuming George made the statements, Futrell's claim is inapposite, as there is no evidence that the statements were related to Futrell's termination. *See, e.g., McCarthy,* 924 F.2d at 686–87; *Waggoner,* 987 F.2d 1160. There is, however, no evidence in the record that George did make such statements, the source of which appears to be a passage in Derks's deposition. Therein, Derks describes a disagreement with George, stating, in relevant part:

> The issue is always, "You've got sharp, young people that are delivering a lot of work and you've got older people that aren't delivering as much work." The tendency is to pick on the older people, and I have some very definite views on that and so does the company. We always had a lot of discussion on that.

(Defendant's Memorandum at 18.) Derks subsequently testified, however, that the disputed words were his. Derks further testified, on both direct and cross-examination, that George himself had never made any such remark. George himself also denied ever having made any such remark. None of the other witnesses, moreover, testified that they had ever heard George, or any other manager, make any such remark. The fact that Derks made the remark, the Court notes, permits no inference that Futrell was dismissed because of his age, because Derks played no role in the decision to terminate Futrell, which lay exclusively with George and Robert Riebau. *See Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1221 (7th Cir.1991) ("Statements made by inferior employees are not probative of an intent to discriminate by the decisionmaker").

■ Futrell further relied on Derks's notation to the effect that offering a particular severance and outplacement package to Futrell would "reduce the chances for an age discrimination suit." (Plaintiff's Response at

7; Plaintiff's Ex. 2.) As a matter of law, however, such a notation, without more, permits no inference of discrimination. As the Seventh Circuit stated in a similar situation, "[n]o inference of guilt can be drawn from awareness of one's own legal obligations; to do so would be to promote the ostrich over the farther-seeing species." *Partington v. Broyhill Furniture Indus., Inc.,* 999 F.2d 269, 271 (7th Cir.1993) (rejecting argument that employer's offer of severance pay in exchange for a release of employee's right to sue under discrimination law was evidence of discrimination).

In light of Futrell's subsequent disavowal, (Plaintiff's Response at 7 n. 1), the Court need not address whether Futrell further relied on the status of his pension, for which he would have been eligible in approximately sixteen months at the time of his termination. In any event, such evidence, without more, does not permit an inference of discrimination. *See, e.g., Hazen Paper Co. v. Biggins,* — U.S. —, —, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993) (without more, termination of employee to curtail his pension benefits does not comprise an ADEA violation); *Visser v. Packer Eng. Associates, Inc.,* 924 F.2d 655, 658–59 (7th Cir.1991) (employer's knowledge of employee's pension status does not permit inference of discrimination). *But cf. Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1421 (7th Cir.1992) ("evidence of timing in relation to the vesting of pension benefits can be evidence of age discrimination") (following *White v. Westinghouse Electric Corp.,* 862 F.2d 56, 62 (3d Cir.1988)).[1]

■ Finally, Futrell relied on the fact that his replacement, Carl Brown, was six years younger. Although no clear rule has yet emerged in the Seventh Circuit, *see Mechnig v. Sears Roebuck & Co.,* 864 F.2d 1359, 1364 n. 5 (7th Cir.1988), such evidence has occasionally been required to demonstrate a *prima facie* case of age discrimination. *See Grohs v. Gold Bond Building Products,* 859 F.2d 1283, 1286 (7th Cir.1988), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989); *Metz v. Transit Mix, Inc.,* 828 F.2d 1202, 1204 (7th Cir.1987); *Huhn v. Koehring Co.,* 718 F.2d 239, 243 (7th Cir.1983). Without more, however, the fact

---

1. The holding in *Castleman,* we note, was effec-     tively rejected by the Supreme Court in *Biggins.*

that a terminated employee is replaced by someone younger does not give rise to an inference that such discrimination actually occurred. As the Seventh Circuit has stated:

> At best, [the employee's] statistics show that older employees were replaced by younger employees. As we have previously noted, this 'phenomenon' represents the normal course of employment histories, and is nothing to marvel at. When older employees leave the work force, for whatever reasons, they will often be replaced by younger employees. This does not give rise to an inference that an employee was fired because of his age.

*Kier v. Commercial Union Ins. Cos.*, 808 F.2d 1254, 1258 (7th Cir.), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987). *See also Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir.1993); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989); *Weihaupt v. American Medical Association*, 874 F.2d 419, 430 (7th Cir. 1989); *La Montagne*, 750 F.2d at 1412–13. On its face, moreover, Futrell's replacement by Brown, in particular, is unnoteworthy. Brown was, after all, only six years younger than Futrell. (Defendant's Memorandum at 25; Defendant's Ex. 8.) Of course, the fact the George, the decisionmaker, was younger than Futrell is, without more, inapposite. *See Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1321 n. 4 (7th Cir.1989) (that decisionmaker was younger than employee terminated "does not create a reasonable inference of discrimination").

### ii. Proffered reason not shown unworthy of credence

■ Second, the Court finds, Futrell failed to prove that Case's proffered reason for his termination is unworthy of credence. In support of his contrary position, Futrell relied principally on two facts, namely that George failed to contemporaneously follow the company's multi-step written disciplinary procedure, and thereafter directed his secretary to transcribe and insert into Futrell's personnel file certain handwritten notes. (Plaintiff's Response at 7–9.) Without more, however, the fact that George failed to follow certain procedures permits no inference that his explanation for Futrell's termination is incredible. As George and Derks both testi-

fied, the latter without contradiction, such informal counselling of upper-level managers was customary. As such, the only inference that might reasonably be drawn from George's inaction was that Futrell was treated no differently than his peers.

The backfiling incident, on the other hand, presents a closer question. Such activity was unusual, even to George's secretary. (*See* Defendant's Memorandum at 27.) On balance, however, several uncontroverted facts work on balance to prohibit any inference that Case's proffered explanation is unworthy of credence. George's secretary, for instance, admitted that she saw the original handwritten notes. As such, it may not reasonably be inferred that the filed documents were merely manufactured out of "whole cloth," rather than transcribed from George's notes. (*See* Plaintiff's Response at 8.) George did not, moreover, attempt to conceal what he was doing. In fact, George fully explained to his secretary exactly how he wanted her to file the transcriptions. As such, it may not reasonably be inferred that George directed the backfiling because he believed that Futrell's termination was illegal. (*See id.* at 7.) Finally, evidence elsewhere in the record corroborates, to great extent, the incidents memorialized in the notes. Futrell himself disputed only the contents of the first, which reports a conversation that occurred shortly after George commenced duties at the Wausau plant. As such, it may not reasonably be inferred that the notes were an attempt to create, much less created, a false record of nondiscriminatory reasons, or pretext, for Futrell's termination. (*See id.* at 8–9.)

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the judgment entered in favor of Futrell by this Court on August 3, 1993 be **VACATED.**

**IT IS FURTHER ORDERED** that defendant Case's motion for judgment as a matter of law be **GRANTED.**

**SO ORDERED.**