McCurley SMITH, Plaintiff–Appellant,

v.

COOK COUNTY, doing business as Cook County Hospital, Defendant–Appellee.

No. 95–1019.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1995.

Decided Jan. 26, 1996.

**830**

Herbert H. Victor (argued), Katherine M. Anthony, Chicago, IL, for Plaintiff–Appellant.

Ina R. Silvergleid (argued), Office of the State's Attorney of Cook County, Chicago, IL, Karen J. Dimond, Robbins, Schwartz, Nicholas, Lifton & Taylor, Chicago, IL, John J. Murphy, Office of the State's Attorney of Cook County, Labor & Employment Division, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff Smith appeals a grant of summary judgment in favor of defendant Cook County Hospital (the Hospital). Smith alleged that the Hospital violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, in terminating his employment on December 15, 1991. The district court found that, even assuming that Smith could make a *prima facie* case of discrimination, he had given the court "no basis to conclude that the legitimate business reason for Smith's termination proffered by Cook County Hospital is merely pretext for age discrimination." 869 F.Supp. at 551. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). We affirm.

### Factual Background

In the fall of 1991, Smith was employed by the Hospital as a Management Analyst IV within the Hospital Information Systems (HIS) department. At that time Smith was 48 years old. In this position Smith was responsible for several projects involving the implementation of computer software for the Hospital's use. His main project was to work with the clinical departments in the Hospital to develop a detailed list of services and their respective costs. This compilation was called a Charge Master and could be used with the Hospital's computerized billing program (PATCOM). The parties dispute whether Smith was performing this task adequately.

Smith lost his job as part of a reduction-in-force (RIF), which involved 154 employees.

He was notified of the termination on December 2, 1991 and it became effective on December 15, 1991. The RIF was part of a general effort to reduce the Hospital's budget for 1992 pursuant to the requirements of the Cook County Board of Commissioners. At about the same time that the RIF was ordered, plans were also being made to reorganize the HIS department. These plans were the result of a study of the department by an outside computer consulting firm, the Foster Group. The problems pointed out by the Foster Group led the Hospital management to decide to hire the Foster Group on a contract basis to manage the HIS department. This agreement was entered into in December 1991.

According to the Hospital, the pending reorganization of the HIS department led to a decision to terminate, as part of the RIF, any employees who were not vital to the operation of HIS. Seven employees were terminated, five of whom, Smith included, were serving as systems managers. The other terminated employees were aged 52, 49, 48, 40, 38, and 36. Only three employees who worked on software applications were retained. One of these, Solomon Appavu, was 45 years old at the time and was the director of the HIS department. The other, Vasanta Doss, to whom Smith reported in his work on the Charge Master, was 32 years old at the time and was the project director for PATCOM. The remaining individual, Kathleen Shay, although working in the HIS department, was being paid out of the budget of the Nursing department, which did not experience any layoffs during the RIF.

## Analysis

We review a grant of summary judgment *de novo* and affirm only if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On appeal, Smith argues that there is an issue of material fact whether the reasons for his termination proffered by the Hospital are pretextual.

■ When an employee has no direct evidence of discrimination under the ADEA, the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is employed. *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655 (7th Cir.1991). Under this approach, the plaintiff has the burden of making out a *prima facie* case of discrimination. If this burden is met, the employer must articulate a legitimate, non-discriminatory reason for the termination. Once the employer has offered such a reason, the plaintiff "must raise some doubt as to the genuineness of the given reasons for a termination." *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 403 (7th Cir.1992).

■ In a case involving a RIF, the elements of the *prima facie* case which Smith must prove are: i) that the plaintiff was in the protected age group, ii) that he was performing according to his employer's legitimate expectations, iii) that he was terminated and iv) that others not in the protected class were treated more favorably. *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1163 (7th Cir.1994). The employees who were more favorably treated must have been situated similarly to the plaintiff. *See, e.g., Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir.1995).

The district court assumed for purposes of its decision that Smith could meet the burden of proving a *prima facie* case. In our view the district court was very generous to Smith in adopting this assumption. Of course, it is undeniable that Smith was over forty and in the protected age group at the time of his termination. It is equally clear that he was terminated. But there is a dispute whether Smith was performing satisfactorily. Most importantly, the record does not support the contention that others not in the protected class who were situated similarly to Smith were treated more favorably in the RIF. Smith does not dispute that the only employee who was under forty, who specialized in software and who was retained in the HIS budget after the RIF was Doss. Nor is there any question that Doss was the project director of the PATCOM system and Smith's supervisor. R. 42 para. 29 and Exh. I, Organization Chart. Thus, it is difficult to see how she was situated similarly to Smith, who

was lower in authority and responsibility. In fact, a comparison of the list of terminated employees with the Organization Chart prepared in July 1991 shows that out of seven employees holding positions equivalent to Smith's (Systems Manager in one of the two groups doing software applications), five were laid off at the same time as Smith. One of the two not terminated was not paid out of the HIS budget, being "on loan" from another department. R. 42 para. 30 and Exh. I. The other was also not supported by the HIS budget after the RIF.[1] Therefore, the record establishes that the Hospital essentially terminated *everyone* who was in a position comparable to Smith's except for one individual whose funding came from another department.

Even if we were to assume, as did the district court, that Smith could have successfully defeated a motion for summary judgment with respect to his *prima facie* case, he makes no showing of an issue of material fact as to the genuineness of the Hospital's explanation of its decision.

■ The Hospital explains that, since it intended to reorganize the HIS department under the guidance of the Foster Group and since it was required to eliminate some positions pursuant to the RIF, only the most essential employees were retained. No one disputes that, of the employees for whom it was financially responsible, the HIS department retained only two, Doss and Appavu, to work in the software area. The Hospital contends that these two were chosen for their superior knowledge and expertise and, as already discussed, this explanation is amply supported. They held supervisory positions and there is no evidence to put their expertise in doubt.

Smith argues that the RIF and the reorganization of the HIS department were pretexts for laying him off on account of his age. Thus, Smith points to four Management Analyst positions in the HIS department which were not allocated to the department in the Cook County Board President's original 1992 budget proposal but were instead reinstated during the budget process. He suggests that these were positions in which he could have been placed rather than being laid off. In fact, these positions were reinstated several days *before* Smith received the notice that he was being terminated. Def.Reply Br. to the Dist.Ct., R. 52, Exh. T. Had these positions not been reinstated, the HIS department would have been forced to lay off even more than the seven individuals terminated on December 15, 1991. For in 1991 the HIS department had 17 budgeted positions. *Id.* The President's original budget recommendation would have reduced the staff of HIS to only six positions. *Id.* The final budget in fact left the department with a total of ten positions. *Id.* The eventual number of employees laid off under the final budget was thus seven. The reinstatement of positions in November 1991 has no bearing on Smith's claim, since it occurred prior to his termination and was already taken into account in the decision to terminate seven employees, including Smith, on December 15, 1991.

As further evidence that the RIF and the reorganization of the HIS department were pretextual, Smith alleges that positions for which he would have been qualified became available within a few days of his termination. R. 44, Exh. I. All of these positions were not in HIS, but were in the Financial Services department. None were Management Analyst positions and all paid substantially less than Smith had been paid. Seven were for Accountants, one was for a Senior Clerk and one was for a Bookkeeper. R. 44, Exh. I. We assume, for purposes of summary judgment, that, in spite of the mismatch between these positions and Smith's, he would have been qualified to fill these positions and would have applied for them if he had been allowed.[2]

■ Even if Smith would have been qualified for the positions, however, the fact that they became available shortly after the RIF cannot support an inference of discriminatory motivation for his termination. First of all,

---

1. The record is unclear as to what happened to this employee, but no one suggests that he or she is currently supported by the HIS budget.

2. Indeed, Smith had worked in the General Accounting department and it seems plausible that he would have been qualified for these positions.

under the ADEA, "an employer incurs no duty to transfer an employee to another position when it reduces its work force for economic reasons." *Taylor*, 69 F.3d at 780. Even more to the point here, the positions which became available shortly after the RIF were available only to employees already on the payroll. The restriction of job availability to current employees is entirely consistent with an employer's having undergone a recent RIF. To have made these positions available to Smith after the RIF (when he was no longer on the payroll) would have meant increasing a work force which had just been reduced for budgetary reasons. To have made them available to him before the RIF (assuming, as Smith suggests, that Hospital management knew of them at the time) would have meant laying off some other employee. Smith presents neither argument nor evidence why the employees who eventually did transfer into these positions should have been laid off in his stead. He does not even make the argument that these positions were filled with individuals under the age of 40.

Smith relies on *Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314 (7th Cir.1987) in arguing that the existence of these positions in other departments potentially raises an inference of discrimination sufficient to ward off a motion for summary judgment. *Ayala* is distinguishable, however, because that decision rested in part on the fact that there was evidence that *new employees* were hired in the first few months following the termination of the plaintiffs. In addition, there was an allegation that the layoffs there constituted a deviation from an established interdepartmental seniority system which would have required that the plaintiffs be transferred to other departments to replace less senior employees. Smith alleges neither of these circumstances. The positions here which became available after the RIF were available only to current Hospital employees. Smith has not alleged that the Hospital made new hires shortly after the RIF. Nor has Smith claimed that the Hospital ordinarily followed an interdepartmental seniority system. As we noted in *Ayala*, "a company's non-adherence to a seniority system does not, standing alone, constitute age discrimi-

nation." *Id.* at 1320, n. 7. *Ayala* suggests only that "deviations from an otherwise observed seniority system may, at least when combined with other circumstantial evidence, be relevant on the issue of whether the employer's decision was age-neutral or age-conscious." *Id.*

Smith also relies on *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), *overruled in irrelevant part by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir.1988). In *McNeil*, however, the employer was advertising positions in another division, for which the plaintiff was qualified, at the time that he was terminated. *Id.* at 115. Most importantly, there was direct evidence of age discrimination, which we found sufficient to support an inference of intentional discrimination. *Id.* Thus, *McNeil* is of no help to Smith here, where there were no new openings at the time he was fired and where there is absolutely no direct evidence of age discrimination.

Finally, Smith points to *Montana v. First Federal Savings and Loan Ass'n*, 869 F.2d 100 (2d Cir.1989). In *Montana* the court overturned a grant of summary judgment to the defendant on the pretext issue. Again, however, there are significant distinctions between the factual situations, which render *Montana* unpersuasive. *Id.* at 105–06. First, when Montana was discharged she was the oldest and highest paid employee in her department. In fact, she was a department head. Second, she was the only department head whose position was eliminated following a corporate reorganization; her staff continued in their employment without her. Third, after she was terminated her duties were reassigned in part to a younger coworker and in part to a younger, newly hired employee. Finally, after Montana was discharged in a supposed RIF, the number of employees in her department was increased by three. Smith, by contrast, was a lower ranked employee whose supervisors were retained in a down-sized department.

*Turner v. Schering–Plough Corp.*, 901 F.2d 335 (3d Cir.1990) is equally unpersuasive. There the Court of Appeals overturned

a grant of summary judgment because it found that there was an issue of material fact regarding whether the employer's reason for not considering Turner for a position which remained unfilled after reorganization was pretextual. There was no suggestion in *Turner* that the reorganization was a RIF spurred by economy. Indeed, although 3000 jobs were affected by the reorganization, only 15 employees were terminated as a result. Smith does not provide any evidence of positions left open after the RIF, other than positions available only for intra-hospital transfer. In any event, under the law of this circuit, as we have noted, there is no duty to transfer an employee to another position during an economically-motivated RIF. *Taylor*, 69 F.3d at 780.

In the final analysis, Smith has provided neither authority nor evidence to persuade us that the reasons for his termination offered by the Hospital were anything other than candid.

Last, we note that Smith has raised a number of specific objections to the district court's analysis. Since we have conducted a *de novo* review of the motion for summary judgment we need not tarry long over these objections. However, a few comments are in order. Smith repeatedly suggests that the district court erred by treating his evidence of pretext in a piecemeal fashion, rather than viewing the evidence in totality. Def.Br. at 11–12, 20–21; Def.Reply Br. at 2–3. He relies on *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13 (7th Cir.1987), *overruled in irrelevant part by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir.1988). There we reversed when the district court granted a judgment n.o.v. to a defendant even though the plaintiff had presented several pieces of evidence to support an inference of age discrimination. The district court had based its decision on the grounds that no one piece of evidence, standing alone, was sufficient to support the verdict. We reversed, holding that the district court should have considered the inferences which could be drawn from the totality of the evidence. *Id.* at 19–20. In the present case, however, the district court did not refuse to consider the cumulative effect of several probative pieces of evidence.

Instead, the court examined each piece of evidence presented by Smith and concluded, as do we, that none of the evidence provides any support for a finding of pretext. 869 F.Supp. at 550–51. Adding together a string of nothings still yields nothing.

Smith also argues that the district court invented a broad rule barring Smith from relying, in proving pretext, on any of the evidence presented to prove his initial *prima facie* case of discrimination. Def.Br. at 10–12, 20–21; Def.Reply Br. at 5–6. Again Smith misinterprets the district court. That court did not follow a purported rule against considering the evidence supporting a *prima facie* case. Instead, it simply noted that the evidence which Smith presented to support his *prima facie* case—i.e. evidence that younger employees were retained—was *irrelevant in this instance* in evaluating whether the proffered reasons for the discharge were pretextual. 869 F.Supp. at 550. While there no doubt are circumstances in which the same evidence would be relevant both to the *prima facie* case of discrimination and to the question of pretext, in this case the evidence that younger employees were retained was indeed irrelevant to the pretext issue. *See Anderson*, 965 F.2d at 403 (applying a similar analysis to find evidence of satisfactory job performance irrelevant to rebutting the employer's proffered reasons for discharge).

Finally, Smith complains about the district court's reliance on *Simpson v. Midland–Ross Corp.*, 823 F.2d 937 (6th Cir.1987), pointing out that this circuit does not apply to RIF cases the "pretext-plus" rule applied there. Def.Br. at 14–16. Smith is correct that we do not follow *Simpson* on that point. *See, e.g., Robinson*, 23 F.3d at 1163. However, the district court here cited *Simpson* only for the rule that, in an economically-driven RIF situation, employers do not have a duty to transfer employees to other positions to avoid their termination. 869 F.Supp. at 550–51. We have very recently affirmed this proposition. *Taylor*, 69 F.3d at 780.

## Conclusion

Having reviewed the evidence that Smith presents in support of his ADEA claim, we

affirm the district court's grant of summary judgment in favor of the Hospital.

AFFIRMED.